**In re Harry C. ROBBINS, a single person, Debtor.**

**Revalle ROBBINS, Plaintiff–Appellee,**

**v.**

**Harry C. ROBBINS, Defendant–Appellant.**

**No. 91–1738.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 7, 1992.

Decided May 19, 1992.

As Amended May 27, 1992.

Joseph Branch Craige Kluttz, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., argued (John H. Culver, III, A. Lee Hogewood, on brief), for defendant-appellant.

Garland Stuart Cassada, Robinson, Bradshaw & Hinson, P.A., Charlotte, N.C., argued (John R. Wester, on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Chief Judge:

This case originates from an equitable distribution dispute between Harry and Revalle Robbins in Florida. Harry filed a petition for bankruptcy in the Western District of North Carolina just as judgment was about to be entered in the Florida trial court, automatically staying the Florida action. *See* 11 U.S.C. § 362(a)(1). Revalle requested the bankruptcy court to remove the stay to allow the Florida action to continue to its conclusion. *See* 11 U.S.C. § 362(d). The bankruptcy court agreed to do so. Harry appealed to the United States District Court for the Western District of North Carolina, which affirmed. Harry now appeals to this court, and we affirm the district court's decision.

### I.

After a forty-year marriage, Harry and Revalle were divorced in Florida in October 1988. In addition to dissolving their marriage, the divorce decree divided their marital property under Florida equitable distribution law. The decree distributed the Robbins' most valuable asset, stock in the closely held Tweetsie Railroad, Inc. ("the Tweetsie Stock"), a corporation that owns an amusement park and has sizable real estate holdings in western North Carolina. The Florida trial court valued the stock at the time of the divorce at $4 million, and ordered that Harry grant Revalle an undivided half interest in the stock. The Florida Court of Appeals reversed this aspect of the decision, ruling that Revalle was instead entitled to the cash value of her share in the marital stock. The court remanded the case to the trial court to provide Revalle with the stock's cash value.

On remand, the parties agreed that the issue could be heard by a special master in lieu of a trial, stipulating that the master's disposition would be presented to the trial court judge solely for the purposes of signature. On October 31, 1990, the master issued a report interpreting the court of appeals to have held that Revalle was entitled to the cash value of her stock at the time of the divorce, $2 million, notwithstanding Harry's objections that the value of the stock subsequently had declined precipitously. The master ordered that Harry pay his former wife five annual installments of $400,000, plus interest, and granted Revalle a lien on the Tweetsie Stock to secure performance of the order.

On November 20, 1990, before the trial court entered the master's judgment, Harry filed a Chapter 11 bankruptcy petition in the Western District of North Carolina before the Hon. Marvin R. Wooten. The petition automatically stayed the equitable distribution proceedings in Florida pursuant to the Bankruptcy Code, 11 U.S.C. § 362(a)(1) ("the Code"). On January 15, 1991, Revalle moved the bankruptcy court to lift the automatic stay for "cause" under section 362(d) of the Code to allow the Florida trial court to enter judgment incorporating the special master's report.

On March 15, 1991, the bankruptcy court concluded that it should lift the stay because: (1) the equitable distribution proceedings involve the interpretation and application of Florida law, about which the Florida courts are familiar and the bankruptcy court is not, and bankruptcy courts should grant great deference to state courts in domestic matters, as instructed by the Fourth Circuit Court of Appeals in *Caswell v. Lang*, 757 F.2d 608 (4th Cir. 1985); (2) the equitable distribution proceedings could be concluded most expeditiously and inexpensively in the Florida courts; and (3) the bankruptcy court could protect the estate by retaining jurisdiction and determining the rights of creditors to any of its property once the Florida distribution became final. Thus, according to the bankruptcy court, the Florida courts would only determine the amount of Revalle's claim; she must then get in line

with the other unsecured creditors in bankruptcy court for determination of the amount of her claim to which she is entitled.

Harry appealed the bankruptcy court's decision for *de novo* review by the United States District Court for the Western District of North Carolina, which affirmed the decision in all respects by order dated July 11, 1991. Harry now appeals to this court. Both the bankruptcy court and the district court stayed removal of the stay pending appeal.

## II.

Harry argues that the lower courts improperly interpreted our opinion in *Caswell v. Lang*, and that we must remand the case with proper instructions. *Caswell* held that past-due child support obligations may not be included in a Chapter 13 bankruptcy plan, because "a federal court may not interfere with the remedies provided by a state court in these areas of particular state concern." *Id.* at 610. Harry argues that the bankruptcy court interpreted *Caswell* to hold that bankruptcy courts have no competency to decide divorce matters, including equitable distribution, because they are for the states alone to decide. It is Harry's position that *Caswell* merely held that marital and child *support* obligations are state matters, while property distribution is a distinct claim that federal courts have particular competency and responsibility to decide.

The bankruptcy court's opinion in this case analyzed its decision to lift the automatic stay under the correct legal standards, and it carefully identified the several reasons that weighed strongly in favor of lifting the stay. One of these reasons was the deference that bankruptcy courts owe to state courts in domestic matters, for which the bankruptcy court properly found *Caswell* instructive. Although *Caswell* did not concern Chapter 11, the imposition or lifting of an automatic stay, or equitable distribution, it did emphasize the salutary principle that domestic matters, which include equitable distributions, are primarily

for the state courts to decide. We therefore reject Harry's argument that the bankruptcy court misinterpreted *Caswell*, and we turn to general principles of bankruptcy law.

■ A decision to lift the automatic stay under section 362 of the Code is within the discretion of the bankruptcy judge and this decision may be overturned on appeal only for abuse of discretion. *See In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985). When a bankruptcy petition is filed, most judicial actions against the debtor commenced before the filing of the petition are automatically stayed. *See* 11 U.S.C. § 362(a)(1). The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for repayment and reorganization of his or her obligations. According to section 362(d), the bankruptcy court may lift the stay "for cause." * Because the Code provides no definition of what constitutes "cause," courts must determine when discretionary relief is appropriate on a case-by-case basis. *See In re Mac Donald*, 755 F.2d 715, 717 (9th Cir.1985); 2 *Collier on Bankruptcy* § 362.07[1], at 362–68 to 69. (15th ed. 1992).

■ The bankruptcy court correctly stated the factors the court should consider in deciding whether "cause" has been shown. Slip op. at 6–7. The court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied. *See In re Peterson*, 116 B.R. 247, 249 (D.Colo.1990) (discussing balancing test). The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court. *See In re Mac Donald*, 755 F.2d at 717; *In re Holtkamp*, 669 F.2d 505, 508–09 (7th Cir.1982); *In re Revco D.S., Inc.*, 99 B.R. 768, 776–77 (N.D.Ohio 1989); *In re Pro Football Weekly, Inc.*, 60 B.R. 824, 826–27 (N.D.Ill.1986); *Broadhurst v. Steamtronics Corp.*, 48 B.R. 801, 802–03 (D.Conn. 1985). While Congress intended the automatic stay to have broad application, the legislative history to section 362 clearly indicates Congress' recognition that the stay should be lifted in appropriate circumstances. The Senate Report accompanying the Bankruptcy Reform Act of 1978 stated that:

> [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere.

S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836; *see also* 2 *Collier on Bankruptcy* § 362.07[3], at 362–71. (15th ed. 1991) ("the liquidation of a claim may be more conveniently and speedily determined in another forum").

■ Applying the factors listed above, the bankruptcy court correctly placed equitable distribution disputes in the category of cases in which state courts have a special expertise and for which federal courts owe significant deference. Slip op. at 7–8; *see Hisquierdo v. Hisquierdo*, 439 U.S.

---

\* This section provides, in pertinent part, that:
>> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.
>
> 11 U.S.C. § 362(d).

572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979) (" 'The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.' ... State family and *family-property law* must do 'major damage' to 'clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden.") (quoting *In re Burrus*, 136 U.S. 586, 593–94, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890) & *United States v. Yazell*, 382 U.S. 341, 352, 86 S.Ct. 500, 506, 15 L.Ed.2d 404 (1966)) (emphasis added). As the Bankruptcy Court of the Western District of Michigan has aptly held, "a property settlement involves an inquiry into factors regularly considered by state courts in divorce proceedings, an inquiry which I would find is best left to the state courts." *In re Heslar*, 16 B.R. 329, 333 (Bankr.W.D.Mich.1981). *Accord In re Mac Donald*, 755 F.2d at 717 ("It is appropriate for bankruptcy courts to avoid incursions into family law matters [including property distribution] 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.' ") (quoting *In re Graham*, 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)).

In addition, the bankruptcy court correctly found that lifting the stay would promote judicial economy in this case:

10. The conclusion of the Equitable Distribution Proceeding involves the interpretation and application of Florida law governing Equitable Distribution. The Special Master, before whom the matters would be heard in Florida, is a former Appellate Court Judge in Florida and is well versed in the law governing the issues necessary to conclude the proceeding. The Special Master and the Florida Trial Judge are already familiar with the five year history of this case. To determine the allowability and amount of movant's remaining claims, the bankruptcy court would be not only required to study and interpret Florida law, but to review the case files and replay evidence that might be unnecessary before the Special Master.

11. Moreover, the appointment of the Special Master allows the parties to have the remaining issues heard and determined on an expedited basis, sooner than they could in the bankruptcy forum. According to the affidavit of Peter Kircher, Ms. Robbins' Florida attorney, the issues could be resolved at the Trial level within 60 days.

12. It would be less expensive for both the debtor and the movant to have the proceeding concluded in Florida. Both parties have attorneys in Florida who have been involved in the case for five years. The Florida attorneys are familiar with the evidence relating to the remaining issues, are well versed on Florida law governing those issues and can be prepared to try the issues with relatively little preparation.

Slip op. at 5–6.

Finally, the bankruptcy court correctly concluded that lifting the stay would not harm the estate or the interests of other creditors. The Florida courts would determine, as they are uniquely capable of doing, the amount of the parties' claims to the marital property in question, while the bankruptcy court would retain jurisdiction subsequently to determine the allowance of claims against the estate. Slip op. at 8; *see* 28 U.S.C. § 157. Other courts that have considered the issue of lifting an automatic stay in order to let equitable distribution proceedings conclude in state court have sensibly done so while retaining jurisdiction to make the subsequent distributions from the estate. *See In re Mac Donald*, 755 F.2d at 717; *In re Bible*, 110 B.R. 1002, 1010 (Bankr.S.D.Ga.1990); *In re Palmer*, 78 B.R. 402, 406 (Bankr.E.D.N.Y.1987) ("While the matrimonial court is uniquely qualified to determine the nature and the extent of that [equitable distribution] entitlement, this court is exclusively authorized to adjudicate the impact of that entitlement upon any property subject to the claims of other creditors of the estate."); *see also* 2 *Collier on Bankruptcy* § 362.-07, at 362–61 (15th ed. 1992) (emphasizing bankruptcy court's ability to modify or condition removal of stay). Harry's argument

that the bankruptcy court's equally sensible decision in this case constitutes an abuse of discretion is totally lacking in merit.

### III.

For the aforementioned reasons, the decision of the District Court for the Western District of North Carolina affirming the bankruptcy court's decision to lift the automatic stay pursuant to section 362(d)(1) of the Code on the motion of Revalle Robbins is hereby

AFFIRMED.