Edward N. CLAUGHTON, Jr.,
Plaintiff–Appellant,

v.

Beverly A. MIXSON, Defendant–Appellee.

No. 93–2048.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1994.

Decided Aug. 17, 1994.

ARGUED: Joseph Branch Craige, Kluttz, Kennedy, Covington, Lobdell & Hickman, L.L.P., Charlotte, NC, for appellant. Garland Stuart Cassada, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for appellee. ON BRIEF: Ashley Lee Hogewood, III, Amy Lee Pritchard, Kennedy, Covington, Lobdell & Hickman, L.L.P., Charlotte, NC, for appellant. Allen Keith Robertson, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC, for appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and CHAPMAN, Senior Circuit Judge.

Affirmed by published opinion. Judge RUSSELL wrote the opinion, in which Judge WILKINSON and Senior Judge CHAPMAN, joined.

### OPINION

RUSSELL, Circuit Judge:

Edward Claughton, Jr. ("debtor") appeals the district court's order affirming the decision of the bankruptcy court to grant Beverly Mixson ("Mixson"), the debtor's former wife, relief from the automatic stay provision of 11 U.S.C. § 362(a) and allow funds from the bankruptcy estate to be distributed to Mixson in satisfaction of an equitable distribution judgment entered by a Florida state court, 140 B.R. 861. We affirm.

### I.

On January 21, 1976, the debtor and Mixson ended twenty-four years of marriage in divorce. After nearly sixteen years of bitter litigation, a Florida state court entered an

order on April 2, 1991 in which it valued the marital assets and distributed them between the parties pursuant to the equitable distribution laws of Florida. In July 1991, Mixson moved for relief from the court's April 1991 order based upon the debtor's alleged fraudulent concealment of evidence indicating that the value of certain property awarded to the debtor was higher than what the court had originally calculated. Before the court could enter an amended order, however, the debtor filed a Chapter 11 petition for bankruptcy in the Western District of North Carolina.

Pursuant to the Bankruptcy Code's automatic stay provision, 11 U.S.C. § 362(a)(1), the debtor's filing of the bankruptcy petition enjoined the Florida state court from entering a decision on Mixson's motion. The parties, however, agreed to a consent order allowing the Florida court to enter an amended order on March 27, 1992. In its amended order, the Florida court awarded Mixson a total of $3,976,465.00.[1]

Upon entry of the amended order, Mixson filed a motion in the bankruptcy court requesting, among other things, relief from the automatic stay to allow her to receive immediate distribution of the marital assets awarded to her in the Florida state court's amended order. Following a two-day evidentiary hearing, the bankruptcy court found that the debtor's estate contained sufficient assets to pay in full all of the debtor's creditors after distribution to Mixson of her share of the marital property. Accordingly, the court lifted the automatic stay "for cause," pursuant to 11 U.S.C. § 362(d)(1), to allow Mixson to collect her share of the marital property. The debtor appealed to the district court which affirmed the bankruptcy court's decision.

## II.

When a bankruptcy petition is filed, most pre-petition judgments against the debtor or property of the estate are automatically stayed. 11 U.S.C. § 362(a)(2). Accordingly, when the debtor in the instant case filed his voluntary bankruptcy petition on February 18, 1992, enforcement of the Florida court's amended order was halted by the automatic stay.

■ Congress, however, has granted broad discretion to bankruptcy courts to lift the automatic stay to permit enforcement of rights against property of the estate. 11 U.S.C. § 362(d). Section 362(d)(1) provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [§ 362(a) ], such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause.

11 U.S.C. § 362(d)(1). Because the Bankruptcy Code provides no definition of what constitutes "cause," the courts must determine when discretionary relief is appropriate on a case-by-case basis. *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir. 1992). We will reverse a decision to lift the automatic stay "for cause" only when an abuse of discretion has occurred. *Id.*

Applying section 362(d)(1), the bankruptcy court concluded that "cause" existed to lift the stay to allow Mixson to receive the marital property awarded to her by the Florida state court because the debtor's estate contained assets of sufficient value to pay in full all of its creditors even after distribution of the marital property to Mixson. We find that the bankruptcy court, in making this decision, properly exercised the discretion granted to it pursuant to section 362(d)(1). The court's decision did not harm the rights of the bankruptcy estate's creditors because the bankruptcy estate retained sufficient assets to pay in full all of the debtor's creditors pursuant to a plan of reorganization.[2] More-

---

1. In addition, on March 27, 1992, the Florida court entered two other judgments against the debtor, one taxing the debtor with Mixson's costs in the amount of $72,824.39 and another charging the debtor with $710,326.61, one half of Mixson's attorneys' fees.

2. Specifically, the schedules that the debtor filed with the bankruptcy court indicate that the debt-

or's assets as of the petition date totaled $6,072,-098.56 and his liabilities totaled $699,029.10. If Mixson's $3,976,465.00 award is subtracted, $2,095,633.56 worth of assets remain in the debtor's estate to pay the estate's $699,029.10 worth of liabilities. Clearly, the bankruptcy court correctly concluded that the debtor is solvent.

The debtor argues, however, that the bankruptcy court's conclusion concerning solvency is er-

over, the record indicates that during the course of the equitable distribution proceedings, the debtor has engaged in frivolous litigation in an attempt to delay surrendering to Mixson her share of the marital property [3]; the debtor's decision to file bankruptcy appears to be just another tactical move to delay further Mixson's recovery. Given the solvency of the debtor's estate, we think the bankruptcy court correctly exercised its equitable power to prevent the debtor from manipulating the bankruptcy court's protection to prolong Mixson's sixteen-year wait for her share of the marital property.

Accordingly, we find that the bankruptcy court's entry of the order lifting the automatic stay was not an abuse of discretion.[4] The

roneous because the $699,029.10 liability figure does not include the debtor's unliquidated and contingent debts which total, according to the debtor's calculations, approximately $1,542,138.00. The debtor fails to mention, however, that two of the claims (Sun Bank: $189,000.00 and IRS: $191,500.00) included in his $1,542,138.00 figure were also included in the $699,029.10 liability figure. The debtor also included $250,000.00 in his calculations for First Union National Bank, even though that claim arises from the debtor's guaranty of a loan to Hounds Ear Club, Ltd. ("Hounds Ear Club") which, according to the debtor's testimony, has sufficient assets to pay all of its loan to First Union. The *debtor's approximation of outstanding claims* should accordingly be reduced in the amount of $630,500.00 to total $911,638.00. The debtor's estate, even after deduction of the $699,029.10 liability figure, clearly is large enough to cover the outstanding claims referenced by the debtor.

The debtor also contends that the bankruptcy court's solvency finding is erroneous because it is based upon an incorrect valuation of the debtor's partnership interest in Hounds Ear Club. Specifically, the debtor contends that the bankruptcy court should have given more weight to the testimony of A.P. Perkinson that the value of the debtor's interest in Hounds Ear Club in a forced sale would be nothing. We disagree. Perkinson is not a certified appraiser and indicated on cross-examination that he did not intend to "render[ ] an appraisal value" of the debtor's interest. Moreover, in April 1991, when the Hounds Ear Club was experiencing significant losses, the Florida state court valued the debtor's interest to be worth $2,368,800.00. In reaching this determination, that court relied upon the testimony of the debtor and his accountant regarding the value of the debtor's interest. Finally, the accountant for Hounds Ear Club testified in the bankruptcy court that although business in 1991 had been flat, sales activity in 1992 had begun to improve. When asked whether he thought Hounds Ear Club would "make it," the accountant responded in the affirmative. We accordingly find that the bankruptcy court did not err when it relied upon a $1,639,187.00 valuation of the debtor's interest in Hounds Ear Club.

3. For example, the debtor has filed several meritless motions to recuse Judge Donner, the Florida trial judge presiding over the equitable distribution proceedings. First, the debtor moved to recuse Judge Donner on the grounds that she could not provide him a fair trial because she was a feminist, was biased, and had been divorced several times. Judge Donner denied the motion and the Florida appellate court affirmed. Shortly before the trial on valuation of the marital assets, the debtor again moved to recuse Judge Donner. This time, the debtor alleged that Judge Donner could not provide him a fair trial because he had filed a complaint against her with the Florida Judicial Qualifications Commission. Judge Donner again denied the motion and the Florida appellate court affirmed. Before filing a third motion to recuse, the debtor filed suit in federal district court in Florida against *Judge Donner seeking to enjoin her from hearing* the equitable distribution issues because he could not receive a fair trial from her. The federal court dismissed this suit at the pleading stage. The debtor then filed a third motion to recuse, alleging that Judge Donner was unable to rule impartially on the matters before her because she had recently been sued by the debtor in federal court. Judge Donner denied this motion and the Florida appellate court affirmed.

In addition to filing meritless motions to recuse, the debtor fraudulently concealed material information concerning the value of certain property that Judge Donner awarded to him in the April 1991 order. Moreover, after the Florida state court entered the April 1991 order, the debtor refused to transfer to Mixson his interest in certain property awarded by that court to her. The debtor's sister subsequently filed a "friendly" lawsuit against the debtor seeking an injunction to prevent the debtor's transfer of his interest to Mixson. With the debtor's consent, the court entered a temporary restraining order which was later made permanent upon the consent of both the debtor and his sister.

4. The debtor contends that the bankruptcy court abused its discretion when it lifted the automatic stay because by doing so, it improperly abandoned its duty to determine the allowance or disallowance of claims against the estate to the Florida state court. Were this a typical bankruptcy case involving an insolvent debtor, we would agree with the debtor. Here, however, the debtor is solvent and thus able to pay all of his creditors in full from the property not awarded to Mixson. We accordingly reject the debtor's argument.

district court's order affirming the decision of the bankruptcy court is hereby

*AFFIRMED.*