In re Robert Arnold ROBERGE, Sr., Debtor.

Kay M. ROBERGE, Appellant,

v.

Robert Arnold ROBERGE, Sr., Appellee.

Bankruptcy No. 94–32674–S.
Civ. A. No. 3:95CV488.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 7, 1995.

Bruce Edwin Arkema, Russell, Cantor, Arkema & Edmonds, Richmond, VA, for appellant.

Bruce Howard Matson, LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA, and William Crenshaw Parkinson, Jr., Richmond, VA, for appellee and J. Stephen Buis, Trustee.

*MEMORANDUM OPINION*

° RICHARD L. WILLIAMS, Senior District Judge.

This matter is an appeal from a decision of the Bankruptcy Court denying Kay M. Roberge relief from the automatic stay in order to prosecute an equitable distribution suit against the debtor, Robert Arnold Roberge, Sr., in a Florida state court. Because the Bankruptcy Court's action constituted an abuse of discretion, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.

## I.

For a case as legally complicated as this one, the facts are remarkably simple. Robert and Kay Roberge lived in Florida as husband and wife for 36 years until 1991, when Robert Roberge left. Ms. Roberge continued to live in the marital residence, the principal asset of the marital estate, and to make mortgage payments on it. In May of 1994, Mr. Roberge obtained an *ex parte* divorce in Virginia. Because an *ex parte* divorce is an *in rem* proceeding—the marriage constituting the *res*—the Virginia state court never established personal jurisdiction over Ms. Roberge, and thus could not effect equitable distribution of the marital estate. *See Boyd v. Boyd,* 2 Va.App. 16, 340 S.E.2d 578, 580 (1986) ("A divorce suit in which the pleadings seek only to terminate a marriage is an *in rem* proceeding, but a proceeding seeking the entry of a decree for spousal support and maintenance is *in personam.*").[1] Neither party sought an equitable distribution proceeding in Florida, the only state with personal jurisdiction over Kay Roberge, and their respective rights in the marital estate remain unresolved. The divorce decree itself, however, by virtue of Florida law, converted the nature of their interests in the marital residence from a tenancy by the en-

---

1. As the Virginia court in any case lacked *in rem* jurisdiction over the Florida realty in question, it could not have itself ordered the property sold, or granted title to it to one party or the other, even if it had obtained *in personam* jurisdiction over both Mr. and Ms. Roberge. If it had possessed such jurisdiction, however, it could have directed the parties to sell the property, or one party to convey his or her interest to the other.

tireties to a tenancy in common. *See* Fla. Stat.Ann. § 689.15.

On July 27, 1994, just two months after he obtained the divorce, Robert Roberge filed a petition for relief under Chapter 7 of the Bankruptcy Code in the Eastern District of Virginia. Kay Roberge subsequently filed an equitable distribution suit in Florida state court, seeking a determination of the parties' respective interests in the marital estate. Upon discovering that her suit was in violation of the automatic stay triggered by the bankruptcy filing, Ms. Roberge moved the Bankruptcy Court to lift the stay so as to allow her equitable distribution suit to proceed. The Bankruptcy Trustee opposed her motion, and the Bankruptcy Court denied it on April 25, 1995. *See In re Roberge*, 181 B.R. 854 (Bankr.E.D.Va.1995). It is from that order that Kay Roberge appeals. The standard of review is abuse of discretion. *See In re Robbins*, 964 F.2d 342, 345 (4th Cir.1992).

## II.

■ A bankruptcy filing creates an estate consisting of all the legal and equitable interests of the debtor in property as of the date of filing. *See* 11 U.S.C. § 541(a)(1). Thus, property co-owned with the non-debtor spouse is part of the bankruptcy estate. *See In re Becker*, 136 B.R. 113, 115 (Bankr. D.N.J.1992). The district court has "exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate." *See* 28 U.S.C.S. § 1334(d) (Law.Co-op.1986).[2]

■ The filing of a bankruptcy petition automatically stays the commencement or continuation of judicial proceedings against the debtor, with certain limited exceptions. *See* 11 U.S.C. § 362(a). Thus, equitable distribution of marital assets is stayed by the filing of a bankruptcy petition. *See In re Robbins*, 964 F.2d at 344. However, the

bankruptcy court can lift the stay "for cause." 11 U.S.C. § 362(d)(1). "Because the [Bankruptcy] Code provides no definition of what constitutes 'cause,' courts must determine when discretionary relief is appropriate on a case-by-case basis." *In re Robbins*, 964 F.2d at 345. Additional authority to grant relief from the stay is found in 28 U.S.C. § 1334(c)(1), which states that

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Kay Roberge argues that she is entitled to relief from the automatic stay because equitable distribution fundamentally involves determination of state law issues in an area of traditional state concern—domestic relations—and thus it is best left to the expertise of a Florida court. The Bankruptcy Trustee argues that the filing of a bankruptcy petition cuts off equitable distribution rights, as such rights under Florida law are subject to the claims of prior creditors, *see* Fla.Stat. Ann. § 61.075, and the Trustee is a hypothetical lien creditor.

Thus, the question presented is this: Does the filing of a bankruptcy petition cut off a spouse's right to equitable distribution? The caselaw is evenly divided.

## III.

### A.

The principal case cited by the Bankruptcy Trustee in favor of the proposition that equitable distribution rights are cut off by a bankruptcy petition is *In re Polliard*, 152 B.R. 51 (Bankr.W.D.Pa.1993). That court concluded that while the wife's right to equitable distribution vested upon the filing of a divorce petition, she did not obtain a vested interest in the entire marital residence. Rather, the husband continued to own his

---

**2.** 28 U.S.C.S. § 1334(d) as quoted is now subsection (e) of the statute. The amendment which renamed it subsection (e) and inserted a new subsection (d), which states that decisions to abstain or not to abstain with regard to certain proceedings related to the bankruptcy are not appealable to the Court of Appeals or to the Supreme Court, took effect October 22, 1994, after commencement of this case, and so by its terms is inapplicable to it. *See* 28 U.S.C.S. § 1334 (Law.Co-op.Supp.1995) (history; ancillary laws and directives).

share of the residence, subject to her equitable distribution claim. Thus, his interest in the property became part of the bankruptcy estate upon the filing of the petition. *See id.* at 53–54. Consequently, the bankruptcy filing cut off Ms. Polliard's interests in her husband's share of the marital property.[3] This logic has been followed by a number of different courts, including, in a recent opinion, one here in the Eastern District of Virginia. *See In re Benyola*, 1993 WL 777031 (E.D.Va. Mar. 19, 1993).

This train of logic is dependent upon the transfer of property interests under the relevant equitable distribution statute being subject to prior perfected liens, as is the case in Florida. *See* Fla.Stat.Ann. § 61.075. If equitable distribution transfers are subject to prior perfected liens against one spouse's interest, then, according to the court in *In re Benyola*:

> Under [Bankruptcy] Code sections 544(a)(1) and (2), a bankruptcy trustee has the rights of a judgment creditor who levies on the debtor's property as of the date the bankruptcy petition is filed, whether or not such a creditor exists. The filing of a bankruptcy petition is therefore the legal equivalent of a levy by the trustee upon all of the debtor's property as of the petition date. It follows that equitable distribution cannot alter a bankruptcy estate's rights in property in which the debtor had an interest on the petition date, whether jointly owned or otherwise.

*Id.* at *3 (quoting *In re Becker*, 136 B.R. at 118 (citations omitted)).

This reasoning is also dependent, however, on the debtor having retained his pre-equitable distribution interest in the property even though the right to equitable distribution has vested. Otherwise, the debtor's interest on the petition date would merely be his share following equitable distribution.

### B.

With that proposition this Court disagrees. A vested right to equitable distribution is meaningless unless the spouse's interest in

the property which is to be equitably distributed also vests. Thus, stating that the filing of a bankruptcy petition cuts off equitable distribution rights because the debtor has retained his pre-divorce interest in the property during the pendency of the divorce proceeding is the same as stating that vested equitable distribution rights are subject to divestment upon the filing of a bankruptcy petition.

■■■■ While vested property rights can be subject to divestment, the mere filing of a bankruptcy petition does not divest otherwise vested equitable distribution rights. Once the right to equitable distribution vests, the parties to the divorce obtain inchoate equitable interests in the marital estate equivalent to the shares to which they are entitled under equitable distribution. The Bankruptcy Code provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Thus, in a bankruptcy proceeding which is commenced after the vesting of equitable distribution rights, only the debtor's inchoate equitable interest in the marital estate becomes part of the bankruptcy estate. The interest is then made choate by the equitable distribution proceeding. To hold otherwise would make the Bankruptcy Code a draconian tool in divorce litigation, because one could then avoid an anticipated unfavorable equitable distribution award by filing bankruptcy.

### C.

■■■ Whether a creditor who perfects a lien against marital assets after the vesting of equitable distribution rights but before an equitable distribution award is made cuts off those equitable distribution rights is a question of state law. A creditor of a wife who dockets a judgment against the marital resi-

---

**3.** The equitable distribution claim is converted into an unsecured claim in the bankruptcy. *See*

*id.* at 54.

dence after a divorce petition is filed but before an equitable distribution award is made may or may not have a lien against the wife's pre-divorce interest, depending upon the relevant state law. In addition, the Bankruptcy Code generally does not act as substantive law, but instead incorporates applicable state law. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property rights are created and defined by state law."). The availability of bankruptcy, however, allows a party to create a hypothetical lien creditor, whether or not such a creditor exists. This fiction is the great advantage of bankruptcy as a method of debt extinguishment. The creation of such a creditor in order to avoid an equitable distribution award, however, perverts the intention of Congress in providing bankruptcy as an option for debtors. The intention of the debtor in such a case often is not debt extinguishment, but rather gaining a greater share of marital assets than one otherwise would be entitled to, by having them applied to outstanding debts.

Bankruptcy law, however, does not slavishly incorporate all state law without any thought to the consequences of that law as filtered through bankruptcy. As the Supreme Court said in *Butner*: "*Unless some federal interest requires a different result,* there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id.* (emphasis added). The Bankruptcy Court itself noted that "[t]he question of what constitutes the property of a bankruptcy estate ... is ultimately a federal question." *In re Roberge,* 181 B.R. at 857. Here, the federal interest is in not having bankruptcy used as a weapon in divorce proceedings. The Bankruptcy Code consistently tries to protect families and preserve the marital residence. *See In re Hursa,* 87 B.R. 313, 315–16 (Bankr.D.N.J.1988) (citing protection of alimony and child support rights and of the marital residence in bankruptcy). Consequently, policy concerns also mandate that vested equitable distribu-

tion rights not be divested by the filing of a bankruptcy petition.

**D.**

The principal case holding this way is *In re White,* 851 F.2d 170 (6th Cir.1988). In that case, the Sixth Circuit held that it was not an abuse of discretion to lift the stay so that the relative interests in the property of the husband and wife could be determined. The court noted that lifting the stay "permit[s] the state court to exercise limited jurisdiction in the kind of matter that is traditionally exclusively reserved for state divorce courts." *Id.* at 173. As the court noted

> The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law. With regard to the present pending state court divorce proceedings, the bankruptcy court has acted to permit the state court with expertise in such matters to decide questions that are an inherent part of the divorce process.

*Id.*

The opinion does not discuss the relevant state equitable distribution statute, in particular, whether equitable distribution is subject to existing liens.[4] Rather, the court was concerned about the Bankruptcy Code being abused as a weapon in a divorce, as discussed above.

Likewise, the Fourth Circuit has upheld the lifting of a stay to allow equitable distribution to proceed as not being an abuse of discretion. *See In re Robbins,* 964 F.2d 342 (4th Cir.1992). In *In re Robbins,* the parties, as in the instant case, were a Florida couple who had divorced, with the husband eventually moving to North Carolina. The husband filed for divorce while the equitable distribution of the marital estate was still pending. The bankruptcy court lifted the stay, relying both on Fourth Circuit precedent that deference is owed to state courts in domestic affairs and on the efficiency considerations of having the equitable distribution proceeding conducted in a Florida state court. *See id.* at 344. The Fourth Circuit approved the bank-

---

4. The Ohio equitable distribution statute, it turns out, is silent on the matter. *See* Ohio Rev.Code Ann. § 3105.171.

ruptcy court's consideration of these factors, especially the first. *See id.* at 344–45.

The Fourth Circuit then set forth the rubric for determining whether the automatic stay should be lifted in a particular case.

> The factors that courts consider in deciding whether to lift the automatic stay include (1) whether the issues in the pending litigation involve only state law, so the expertise of the bankruptcy court is unnecessary; (2) whether modifying the stay will promote judicial economy and whether there would be greater interference with the bankruptcy case if the stay were not lifted because matters would have to be litigated in the bankruptcy court; and (3) whether the estate can be protected properly by a requirement that creditors seek enforcement of any judgment through the bankruptcy court.

*Id.* at 345. Applying those factors to the case before it, the Fourth Circuit found that state courts have a special expertise in equitable distribution matters. It held that judicial economy would be increased by allowing the state court to exercise that same expertise. Finally, it found that lifting the stay would not harm other creditors under the facts presented. *See id.* at 345–46.

### E.

The argument in III. B. and C., *supra,* and the cases cited in III. D., *supra,* while persuasive in most cases, do not mandate a *per se* rule. As the Sixth Circuit noted, if equitable distribution rights are never cut off by bankruptcy, it would be easy for spouses to collude in entering an equitable distribution award that transferred essentially all the marital assets to the non-debtor spouse free and clear, leaving the bankruptcy estate empty. *See In re White,* 851 F.2d at 174. Similarly, the Fourth Circuit has formulated the three-factor test quoted above to determine the appropriateness of a stay in these circumstances. Those courts following the logic of *In re Becker, see* III. A., *supra,* have also emphasized that such cases must be decided on a case-by-case basis rather than by a *per se* rule, with the treatment of the debtor's family being a principal concern. *See In re Becker,* 136 B.R. at 119–20.

Because of the fact-sensitive nature of these cases, as the Fourth Circuit noted in *In re Robbins,* the granting or denial of relief from the automatic stay is reviewed for abuse of discretion. *See In re Robbins,* 964 F.2d at 345. Even given the difficult legal issues involved, and the conflicting policy interests concerning the use of bankruptcy as a weapon in divorce versus collusion to frustrate creditors, it remains possible for a bankruptcy court to abuse its discretion. That is what has occurred in the instant case.

### IV.

#### A.

The Bankruptcy Trustee argues that this case is an easy one. Because the petition for equitable distribution was not filed until after the bankruptcy commenced, he maintains that Ms. Roberge's right to equitable distribution had not vested. In fact, he goes so far as to suggest that she comes before this Court with unclean hands, because the filing of her equitable distribution suit violated the automatic stay. *See* Trustee's Brief at 9.

■ The fact that the equitable distribution proceeding had not commenced when the bankruptcy petition was filed is a factor to be considered, even under the logic of *In re Robbins* and *In re White.* Because the facts in this case are so egregious, however, the Court finds excusable delay on the part of Ms. Roberge. Mr. Roberge obtained an *ex parte* divorce in Virginia: there is no evidence in the record that Ms. Roberge ever knew that she was no longer married. Unable to force her to litigate the distribution of marital property in a Virginia court, he proceeds to file bankruptcy within two months of the divorce decree, compelling her to come to Virginia to litigate issues that absent his bankruptcy only a Florida state court would have jurisdiction over. Furthermore, he has claimed as his homestead property in Henrico County, Virginia, thus protecting his property from creditors, but sacrificing marital property that likely would go to Ms. Roberge under Florida equitable distribution law. Ms. Roberge, since 1991, has made all the mortgage payments and tax payments on the marital residence, the principal piece of mari-

tal property in question. A strong inference appears from the timing of her equitable distribution petition that she did not know what was going on until after the bankruptcy suit was commenced. At that point she acted without delay to protect her rights.

To allow Mr. Roberge to get away with such conduct would be the height of inequity; it is he who has unclean hands. Ms. Roberge cannot be expected to have knowledge of the *ex parte* Virginia divorce. To say that in order to preserve her right to equitable distribution she had to have filed an equitable distribution petition before the filing of the bankruptcy petition is the same as saying that in order to preserve her right to equitable distribution she had to file a divorce petition against her husband after he abandoned her. Under·the decision of the Bankruptcy Court, if she fails to file for divorce upon abandonment, she leaves herself open to the possibility that her husband will get an *ex parte* divorce in another state without her knowledge and then file for bankruptcy, cutting off her right to equitable distribution. The public policy of every state in this country favors the preservation of marriage. *See, e.g., Ryan v. Griffin,* 199 Va. 891, 103 S.E.2d 240, 243 (1958) (public policy of state to foster and protect marriage). A rule which favors the filing of divorce petitions after abandonment is a result not to be encouraged by federal courts. Therefore, Ms. Roberge's failure to file her equitable distribution petition prior to the filing of the bankruptcy petition is excusable delay, and does not prejudice the vesting of her right to equitable distribution.

### B.

Turning to the three part test of *In re Robbins,* binding upon this Court, Ms. Roberge is entitled to relief from the stay. The issues in an equitable distribution proceeding only implicate state law. Furthermore, the

Fourth Circuit adheres to "the salutary principle that domestic matters, which include equitable distributions, are primarily for the state courts to decide." *In re Robbins,* 964 F.2d at 344–45.

Secondly, modifying the stay promotes judicial economy. Ms. Roberge has homestead rights in the portion of the property she holds as a tenant in common.[5] *See* Fla. Const. art. X, § 4. Therefore, any attempt to collect a bankruptcy award out of the property will require a partition proceeding to be brought in a Florida state court. Thus, Florida state courts will be involved no matter what.

Finally, Mr. Roberge's creditors are not prejudiced by allowing the equitable distribution action to proceed. The posture of the case shows that no danger of collusion between the Roberges to the detriment of Mr. Roberge's creditors exists. Furthermore, had the property issues been settled contemporaneously with the divorce, Ms. Roberge would have obtained her equitable distribution share then, and the property would not be available to pay Mr. Roberge's creditors. "A trustee in bankruptcy stands in the shoes of the bankrupt and succeeds only to the bankrupt's interest in property." *Angeles Real Estate Co. v. Kerxton,* 737 F.2d 416, 418 (4th Cir.1984). The Bankruptcy Trustee therefore should not be allowed to profit by Mr. Roberge's inequitable actions in obtaining an *ex parte* divorce to free himself from the marriage without any property settlement, and then filing bankruptcy to use marital property that would go to his wife under equitable distribution to pay his creditors.

### V.

For all the foregoing reasons, and under the test enunciated in *In re Robbins,* the Bankruptcy Court abused its discretion in not lifting the automatic stay so that the

---

**5.** The Bankruptcy Court in its opinion makes frequent mention of the fact that prior to the equitable distribution suit, each of the parties held a one-half undivided interest as tenants in common. *See In re Roberge,* 181 B.R. at 857. It cites no support for, and this Court has found no Florida law in support of, the proposition that if a tenancy by the entireties is converted to a tenancy in common, the parties are presumed to have equal undivided shares. As Ms. Roberge points out in her brief, all the phrase "tenancy in common" denotes is a "[a] form of ownership whereby each tenant ... holds an undivided interest in property" which does not terminate upon the tenant's prior death. *Black's Law Dictionary* 1465 (6th ed. 1990). It indicates nothing about what share of the proceeds each tenant is entitled to upon partition of the property.

equitable distribution action could proceed. Therefore, the decision of that court is reversed, the automatic stay is lifted with respect to Ms. Roberge's equitable distribution proceeding in Florida, and the case is remanded for further proceedings consistent with this opinion.