In re Jacqueline Witcher GRANATI, Debtor.

Stone Street Services, Inc., Movant,

v.

Jacqueline Witcher Granati, Respondent.

No. 00–14419–SSM.

United States Bankruptcy Court, E.D. Virginia, Alexander Division.

April 9, 2001.

Jacqueline Witcher Granati, Stafford, VA, pro se.

Elyse L. Wolf, Wechsler, Selzer & Gurvitch, Chartered, Bethesda, MD, for Stone Street Services.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

Before the court are (a) the pleading filed by the debtor on March 13, 2001, entitled "Noting of Exception to Decision," with respect to this court's order of March 8, 2001; and (b) the motion of Stone Street Services, Inc. ("Stone Street") to revise that same order. Since a full hearing was held on the underlying motion for relief from the automatic stay; and since the respective position of the parties are fully set forth in their pleadings, oral argument is unnecessary. For the reasons stated, the court will vacate the prior order and will deny relief from the stay.

### Background

Jacqueline Witcher Granati ("the debtor") filed a voluntary petition under chapter 7 of the Bankruptcy Code in this court on November 11, 2000. The trustee filed a report of no distribution on January 19, 2001, and the debtor received a discharge of her dischargeable debts on February 14, 2001.

Prior to the filing of the bankruptcy petition, the debtor was the defendant in a chancery suit that had been brought against her by Stone Street in the Circuit Court of Prince William County, Virginia.[1] Briefly, the debtor was the beneficiary of an annuity that had been purchased in 1985 to fund a "structured settlement" of a claim for the wrongful death of her hus-

1. *Stone Street Capital, Inc. v. Jacqueline Witcher–Granati,* Chancery No. 46468. Stone Street Capital, Inc., is evidently the party with whom the debtor contracted and Stone Street Services, Inc., is the entity that services the contract.

band.[2] In March 1997, Stone Street entered into a contract with the debtor to purchase her right to receive 216 payments under the annuity.[3] Because the insurance company would not recognize an assignment of the right to receive payments, a bank account was set up in the debtor's name, but under the control of Stone Street, to which the annuity payments were sent. Stone Street received payments for approximately 21 months; however in March 1999, the debtor directed the insurance company to stop sending the payments to that account but instead to an account under her control. The bill of complaint asserted that the debtor's conduct in diverting the funds that she had assigned to Stone Street constituted a breach of contract, breach of fiduciary duty, fraud, and conversion. The relief sought included imposition of a constructive trust, an injunction to compel the debtor to pay over future annuity payments, and money damages for breach of contract and conversion. Stone Street moved for partial summary judgment to require the debtor to deposit into the registry of the court any annuity payments she received pending a final ruling. The Circuit Court granted that motion by order entered October 27, 2000. The debtor did not comply with that order and, as noted, filed her chapter 7 petition two weeks later.

In this court, Stone Street filed an objection on January 9, 2001, to the debtor's claimed exemption of the annuity payments.[4] On February 8, 2001, Stone Street filed two pleadings. First, it filed a complaint to determine that its claim against the debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), as well as declaratory relief that Stone Street is either the owner of, or has a valid security interest in, the annuity payments.[5] Second, Stone Street filed a motion for relief from the automatic stay in order to liquidate its damage claim in the Prince William County Circuit Court and to enforce the October 27, 2000, order, or, in the alternative, for adequate protection of its interest in the payments.

A hearing on the relief from stay motion was held on March 7, 2001. After considering the arguments presented, the court ruled that the automatic stay would be partially lifted to allow Stone Street to enforce the October 27, 2000, order and to obtain from the Circuit Court a ruling as to the respective rights of the parties to the annuity payments, whether pre-petition or post-petition, and to decree injunctive relief with respect to post-petition payments. An order reflecting the bench ruling was signed on March 7, 2001, and entered on the docket on March 8, 2001. It further stated as follows:

> [N]o money judgment shall be entered against the defendant with respect to pre-petition payments unless the debtor's discharge is revoked or the pre-

---

**2.** From exhibits attached to the debtor's pleadings, it appears that the single-premium annuity policy was issued by First Colony Life Insurance Company but is owned by Protective Insurance Company. The annuity pays $800.00 per month for the life of the debtor, with a guaranteed period of 30 years.

**3.** Stone Street does not state in its pleadings how much it paid. However, the debtor states in her answer in the adversary proceeding that she received $52,000.00. According to her answer, she used part of it to pay off

bills and the remainder "to go into business by purchasing two taxicabs," one of which "was lost in a wreck" and the other of which "failed to produce income."

**4.** That objection is set for hearing on June 19, 2001.

**5.** *Stone Street Capital, Inc. v. Granati*, 270 B.R. 575 (2001), Adversary Proceeding No. 01–1025.

petition claim is determined by this court to be nondischargeable. Additionally, no money judgment may be entered against the defendant with respect to post-petition payments unless the debtor's discharge is revoked or the Circuit Court determines that the debtor is liable for such payments based on the Second, Third, Fourth, or Fifth cause of action, since any purely contractual liability, as pleaded in the First cause of action, has been discharged.

Finally, the order stated that it was without prejudice to the right of either party to remove the Circuit Court proceeding to this court under 28 U.S.C. § 1452.[6]

On March 13, 2001, the debtor filed a pleading entitled "Noting of Exception to Decision," which the clerk construed and docketed as a motion for reconsideration. On March 19, 2001, Stone Street filed a "Motion to Revise Order" which seeks to remove the restriction with respect to the contract cause of action.[7]

### Discussion

### A.

■ The filing of a bankruptcy petition creates an automatic stay of, among other acts,

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]

* * *

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a). At the request of the party stayed, the automatic stay may be annulled, terminated, modified, or conditioned, for "cause," which includes but is not limited to lack of adequate protection. 11 U.S.C. § 362(d)(1). "Cause" (other than lack of adequate protection) is not defined in the Bankruptcy Code; rather, the court is required "[to] balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *Robbins v. Robbins (In re Robbins)*, 964 F.2d 342, 345 (4th Cir.1992). Where relief is requested to proceed with litigation in another forum, the factors normally considered include (1) whether only issues of state law are involved; (2) whether judicial economy will be promoted; (3) whether the litigation will interfere with the bankruptcy case; and (4) whether the estate can be protected by requiring that any judgment obtained be enforced only through the bankruptcy court. *Id.*

■ The automatic stay is not a permanent injunction. It expires, with respect to acts affecting property of the bankruptcy estate, when the property is no longer property of the bankruptcy estate. With respect to all other actions, it expires when the debtor is granted or denied a discharge. 11 U.S.C. § 362(c). With respect to dischargeable debts, however, the automatic stay is replaced by the discharge injunction, which prohibits "the

---

**6.** Neither party has sought to do so.

**7.** Both motions were filed within ten days of the entry of the order and are therefore timely

under Rule 59(e), Federal Rules of Civil Procedure, which is incorporated by Fed. R.Bankr.P. 9023.

commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2). The discharge does not, however, eliminate valid liens. Such liens normally pass through bankruptcy unaffected and may be enforced *in rem* against the collateral after the bankruptcy case is concluded. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991).

A chapter 7 discharge discharges the debtor from personal liability for "all debts that arose before the date of the order for relief under this chapter ... whether or not a proof of claim based on any such debt or liability is filed ... and whether or not a claim based on any such debt or liability is allowed." 11 U.S.C. § 727(b). A "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). A "claim" in turn is broadly defined as a

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5). Thus, causes of action which are contingent or unmatured under state law are nevertheless "claims," and hence dischargeable, even though not yet ripe for suit. *See Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198 (4th Cir.1988) (injury resulting from defective birth control appliance inserted prepetition was a "claim" subject to automatic stay even though injury did not manifest itself until after bankruptcy filing); *In re Highland Group, Inc.,* 136 B.R. 475, 481 (Bankr. N.D.Ohio 1992) ("[w]here an indemnification agreement is entered into prior to a bankruptcy filing, such an execution gives the indemnitee a contingent pre-petition claim. This is so even where the conduct giving rise to the indemnification occurs post-petition."); *In re Chateaugay Corp.,* 102 B.R. 335 (Bankr.S.D.N.Y.1989) (indemnity loss claims arising under an agreement entered into and executed prior to the filing date are clearly pre-petition claims).

### B.

The court will first address Stone Street's motion to revise. Stone Street asserts that "a legal issue exists as to whether a cause of action has already accrued as to the future Settlement Payments, or whether it accrues each month as the Defendant converts each Settlement Payment." Stone Street suggests that if this court or the Circuit Court adopts the latter view, the discharge "would not apply to the future payment stream regardless of whether Defendant is liable for breach of contract, fraud, or conversion." Motion ¶ 17. This is simply incorrect. Regardless of when the cause of action with respect to particular payments "accrues" under Virginia law, any purely contractual right of recovery is discharged. Put another way, if a debtor enters into a prepetition contract, any liability for the subsequent breach of that contract (assuming the debtor does not reaffirm it under 11 U.S.C. § 524(c) is discharged regardless of whether the breach occurs prepetition or postpetition. Here, the debtor indisputably entered into the contract prepetition. Thus, any purely breach of contract claims have been discharged. For that reason, there is no basis for revising the order to

eliminate the restriction with respect to Stone Street's claim for breach of contract.

### C.

■ Of course, Stone Street has claims other than those grounded purely in breach of contract. It asserts that it is either the owner of the debtor's right to receive the annuity payments or has a valid security interest in them. A discharge does not eliminate either an ownership interest or a valid lien in property. Furthermore, if the debtor has converted Stone Street's property or collateral, her liability for such conversion is potentially excepted from discharge under 11 U.S.C. § 523(a)(6) as a willful and malicious injury to property. Stone Street has also alleged that the debt is nondischargeable under 11 U.S.C. § 523(a)(4) as a fiduciary defalcation and under 11 U.S.C. § 523(a)(2)(A) as grounded in fraud. While state courts have concurrent jurisdiction with bankruptcy courts to determine the dischargeability of certain types of debts, the bankruptcy court has exclusive jurisdiction to determine the dischargeability of debts alleged to be excepted from discharge on the grounds alleged by Stone Street. 11 U.S.C. § 523(c).[8]

### D.

In her exceptions, the debtor takes issue with the court's decision to grant relief from the automatic stay both on the equitable ground that it is unfair to hold the annuity payments "hostage" until there has been a ruling on the merits, and on the ground that the annuity payments are exempt as the proceeds of a wrongful death settlement.

■ Whether the payments are exempt, however, is simply not the issue. A lien is not invalidated in bankruptcy simply because the collateral is claimed as exempt. 11 U.S.C. § 522(c). Nor can a property interest be defeated in bankruptcy merely by claiming the property as exempt. It is true that there is a limited ability in bankruptcy to avoid, or set aside, certain types of liens against exempt property. 11 U.S.C. § 522(f). These include judgment liens as well as certain consensual liens. A consensual lien may be set aside, however, only in household goods and furnishings, medically prescribed health equipment, and tools of the trade. 11 U.S.C. § 522(f)(1)(B). Otherwise, valid liens, even against exempt property, pass through bankruptcy and may be enforced against the collateral after the debtor receives a discharge.

■ The issue therefore is not whether the annuity payments are exempt but whether the documents signed by the debtor were legally sufficient either to transfer ownership of the 216 future payments to Stone Street or to create a security interest in those payments, given (a) the restrictions on assignment in the settlement agreement and (b) common-law restrictions on assignment of personal injury and wrongful death claims. As a general proposition, prepetition assignments (other than of wages)[9] are enforceable notwithstanding an intervening bankruptcy discharge. For example, in *Reagan v. Austin Municipal F.C.U. (In re Reagan)*, 741 F.2d 95 (5th Cir.1984), the debtor was a participant in a municipal retirement plan that, while generally prohibiting the assignment of

---

8. The only exception is when the creditor is not listed on the schedules in time to permit the timely filing of a nondischargeability complaint. 11 U.S.C. § 523(a)(3)(B).

9. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (pre-petition assignment of wages to secure repayment of a loan does not survive bankruptcy discharge).

benefits, contained an exception for a specific credit union. The debtor borrowed from that credit union and assigned her pension as collateral. She subsequently filed bankruptcy. The Court held that, although the debtor's personal liability on the loan had been discharged, the assignment survived the bankruptcy and could be enforced against any payments ultimately due to the debtor. On the other hand, where applicable nonbankruptcy law prohibits assignment, an attempted assignment creates no rights that may be enforced following bankruptcy. *See Dorfman v. Moorhous (In re Moorhous),* 180 B.R. 138 (Bankr.E.D.Va.1995), *aff'd* 108 F.3d 51 (4th Cir.1997). In *Moorhous,* an investor had attempted to purchase the debtor's right to receive future payments of military retired pay. The government would not honor the assignment, and, as in the present case, the parties set up a bank account in the debtor's name, but under the investor's control, into which the payments were deposited. The debtor subsequently directed the government to send the payments instead to his personal bank account. After the investor brought suit in Federal court, the debtor filed for bankruptcy. Because a federal statute specifically prohibited assignment of military pay, this court concluded that the assignment was ineffective and that imposition of a constructive trust was inappropriate.

The issue of whether the attempted assignment to Stone Street was effective to create a property interest appears to be one of first impression.[10] The court is not aware of any statutory bar, such as existed in *Moorhous,* to such an assignment. Whether public policy would prohibit such an assignment is a more delicate question.[11] In any event, the court need not resolve those issues in the context of the present motion. It is sufficient to observe that the efficacy of the assignment is one that is intimately and necessarily intertwined with both the determination of dischargeability and the prayer for declaratory relief that is pending before this court in Stone Street's adversary proceeding. If the assignment was legally ineffective to create a property or lien interest, the transaction, however it may be characterized on paper, is effectively nothing more than a loan. The result is that the debtor's liability is discharged unless Stone Street succeeds on its 11 U.S.C. § 523(a)(2)(A) claim that the debtor entered into the transaction with the intent to defraud Stone Street. On the other hand, if the assignment was legally effective, the debtor may be guilty of conversion or fiduciary defalcation. As noted, this court has exclusive jurisdiction to resolve the dischargeability claims. To permit the effectiveness of the assignment to be litigated simultaneously in two forums would not only be wasteful of judicial re-

---

**10.** It may also involve difficult choice of laws issues, since the annuity contract was issued in Virginia, and is presumably governed by Virginia law, while the assignment contract between the debtor and Stone Street states that it is governed by Pennsylvania law. Neither party has filed with the court a copy of the wrongful death settlement agreement, and the court can only speculate that it, like the annuity policy, is governed by Virginia law.

**11.** *See* Va.Code Ann. § 8.01–26, which provides as follows:

**Assignment of causes of action.** Only those causes of action for damage to real or personal property, whether such damage be direct or indirect, and causes of action ex contractu are assignable. The provisions of this section shall not prohibit any injured party or his estate from making a voluntary assignment of the proceeds or anticipated proceeds of any court award or settlement *as security for new value given in consideration of such voluntary assignment.* (emphasis added).

sources, but would put the debtor to unwarranted expense and trouble. Accordingly, the court concludes that its prior ruling was in error to the extent that it allowed the state court litigation to go forward before this court had made a ruling as to the dischargeability of Stone Street's claims.

### E.

There remains, however, Stone Street's alternative request for adequate protection. Each month that the debtor keeps and spends the $800.00 annuity payment obviously increases the risk that Stone Street will ultimately suffer a loss even if it prevails in the litigation, simply because as a practical matter the debtor has little if anything by way of assets to respond to a money judgment for the value of the payments that have already been spent. The debtor responds that she needs the money to live on.[12] Her bankruptcy schedules reflect that her only other income is as a school bus driver, for which her take-home pay is $500.00 per month. She lives in a mobile home, and her monthly living expenses are shown as $1,594.00 per month.

In the present case, the balance-of-hardships test slightly favors the debtor. Absent further briefing, it is difficult to say which party has the greater likelihood of success on the underlying legal issue, which, as the court has noted, appears to be one of first impression in Virginia. That issue may be brought before the court at any time by motion for summary judgment in the adversary proceeding. Additionally, the final pretrial conference in the adversary proceeding is scheduled for June 11, 2001, which is only two months in the future. Trials in this court are typically held within 4 to 6 weeks of the final pretrial conference. Thus, however the issue is ultimately resolved, it is likely to be resolved sooner than later. Given that reality, as well as the substantial uncertainty as to how the validity of the assignment will be resolved, the court is reluctant to deprive the debtor of the funds needed for her basic living expenses before there has been a ruling in the creditor's favor.

### F.

For the foregoing reasons, a separate order will be entered vacating the order of March 8, 2001, and denying the motion for relief from automatic stay.

---

12. She has also filed a pleading stating that the annuity is deposited electronically into an account owned jointly with her mother. The ownership of the account, however, is completely irrelevant. If the funds belong to Stone Street, its interest is not defeated simply because the debtor has arranged for them to be deposited into a joint account where they are commingled with other funds.