**In re Jill Ann BINDER, SSN 535–82–9111, Debtor.**

**Bankruptcy No. 97–22405 MSK.**

United States Bankruptcy Court, D. Colorado.

Aug. 28, 1998.

**484**

Mark E. Henze, Law Offices of Sharon W. Grossenbach, Denver, Colorado, for debtor.

Hayley L. Belt, Meinhold, Stawiarski, Shapiro & Codilies, Englewood, Colorado, for Chase Manhattan Mortgage Corporation.

## ORDER

MARCIA S. KRIEGER, Bankruptcy Judge.

THIS MATTER comes before the Court on (1) Motion for Relief from Automatic Stay brought by Chase Manhattan Mortgage Corporation (Chase Manhattan) and the Debtor's Response thereto; and (2) Debtor's Motion to Modify Chapter 13 Plan Post Confirmation and Chase Manhattan's Objection thereto. Appearing on behalf of the Debtor is Mark E. Henze. Appearing on behalf of Chase Manhattan is Hayley L. Belt. Having considered the evidence and arguments presented by the parties, the Court makes the following factual findings and conclusions of law.

### I. JURISDICTION

This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334(a). This matter is a core matter according to 28 U.S.C. § 157(b)(2)(A), (L) and (O).

### II. FACTS

Jill Ann Binder (Debtor) filed her voluntary Chapter 13 petition on August 22, 1997. At the time of the bankruptcy filing, Chase Manhattan held a first position deed of trust on the Debtor's residence securing a debt with a principal balance of $154,000.00. The Debtor purchased the residence and incurred the indebtedness in May 1997, three months before she filed for bankruptcy protection. Her schedules show no equity in the property.

The Debtor is a single mother with three dependent children ages 4, 10, and 11. According to her initial Schedule I, the Debtor's monthly net take-home pay as an administrative specialist was $1,756.00. She also received $1,500.00 per month child support making her net monthly income $3,256.00. According to her initial Schedule J, she had monthly expenses of $3,136.00, yielding disposable monthly income of $120.00. Over one-third of the Debtor's monthly expenses ($1,105.00) were for mortgage payments to Chase Manhattan. She also paid $375 per month for her five-year-old Jeep Cherokee with 98,000 miles on its odometer.

The Debtor's Chapter 13 plan was confirmed on February 24, 1998. It provided for payment of $120.00 per month to the Chapter 13 Trustee for 36 months to be distributed as follows: $1,500.00 for attorney fees; $348.00 to creditors holding liens on personal property; $279.27 to unsecured creditors, and $392.73 to the Chapter 13 Trustee. Because the Debtor was current in

her mortgage payments at the time of the bankruptcy filing, her payments to Chase Manhattan were to be paid "outside the plan."

Unfortunately, the Debtor's financial circumstances worsened after confirmation of the plan. She failed to pay Chase Manhattan, mistakenly believing that her PITI payments were being automatically deducted from her checking account. Her former husband defaulted in paying his child support obligation, which obligation was ultimately reduced to $1,100.00 per month. Two of her three children became ill creating unanticipated medical expenses for which she was unable to obtain contribution from the children's father. As a result, the Debtor failed to make eight post-petition payments to Chase Manhattan totaling approximately $9,000.00.

At the time of the hearing on the pending Motions, the Debtor held certified funds for three of the missed payments. She sought to modify the confirmed Chapter 13 plan to cure the remaining arrearage. Amended Schedules I and J filed in support of the proposed modification reflect her reduced income of $2,856.00 and reduced expenses of $2,735.38, yielding disposable income of $120.62. Her current monthly budget includes the following:

| | |
|---|---|
| Home maintenance repairs and upkeep | $ 20.00 |
| Food | $400.00 |
| Clothing | $ 25.00 |
| Medical and dental expenses | $ 30.00 |
| Transportation | $ 30.00 |

The Debtor proposes to cure her post-petition [1] arrearage to Chase Manhattan by increasing the plan term from 36 to 60 months and increasing monthly payments to the Trustee for months 38–60 from $120.00 to $493.00. The increased plan payments will be funded by elimination of the car payment. The Debtor hopes and anticipates that her compensation may be increased in the future. Her award of child support will be reviewable in July 1999.

**III. ISSUES**

Chase Manhattan seeks relief from the automatic stay to initiate foreclosure of its deed of trust on the Debtor's residence. It contends that the Debtor's failure to make eight monthly post-petition mortgage payments, most of which occurred after confirmation of the Chapter 13 plan, constitutes "cause" for relief from stay under 11 U.S.C. § 362(d)(1). Alternatively, Chase Manhattan contends that the Debtor's default is material under the terms of her confirmed plan, requiring dismissal or conversion of this case pursuant to 11 U.S.C. § 1307(c)(5).

Debtor responds in the alternative. First, she argues that Chase Manhattan may not obtain relief from automatic stay but is, instead, limited to seeking dismissal or conversion of the bankruptcy case. Second, to the extent that Chase Manhattan may be entitled to relief from the automatic stay for post-confirmation payment defaults or dismissal or conversion, the Debtor argues that such request has become moot due to the proposed plan modification which will cure the post-petition arrearage.

These arguments raise two issues presented to courts within and outside this District.

1. Can a creditor obtain relief from stay for post-confirmation payment defaults, or is a creditor restricted to dismissal or conversion of the case for a material default in performance of the plan?

2. Can a debtor modify a confirmed Chapter 13 plan to cure a post-confirmation arrearage?

Because determination of the second issue may resolve the first, the issues are best addressed in reverse order.

**IV. ANALYSIS**

**A. Can a debtor modify a confirmed Chapter 13 plan to cure a post-confirmation arrearage?**

Modification of a confirmed Chapter 13 plan is governed by 11 U.S.C. § 1329 [2] which

---

1. Technically, the Debtor's default began post-petition in November 1997 before confirmation of her plan. Because neither party distinguishes between post-petition, pre-confirmation, and post

confirmation defaults, the Court declines to do so.

2. 11 U.S.C. § 1329 provides:

allows certain types of modification, provided that the modification comports with the provisions of § 1322(a) and (b),[3] § 1323(c),[4] and § 1325(a).[5] These cross-references require that any plan modification satisfy the standards for plan confirmation in the first instance. In addition, the term of a modified plan cannot extend beyond three years from the first payment ·in the case, except for cause, and under no circumstances can the plan extend beyond five years from the date of the first payment. 11 U.S.C. § 1329(c).

The proposed modification would cure the post-petition arrearages owed to Chase Manhattan over 52 months. The dispute is whether such modification satisfies the requirements of § 1322(b). Without reference to statutory or case authority, Chase Manhattan argues that modification to cure post-petition arrearages is not permitted by § 1322(b), and that cure of the existing arrearage over 52 months would result in an unreasonable delay in payment. The Debtor relies on opinions from the Eleventh and Fifth Circuit Courts of Appeal, both holding that modification of a confirmed Chapter 13 plan for payment of post-petition ·arrearages is permissible under § 1322(b). *Green Tree Acceptance, Inc. v. Hoggle (In re Hoggle)*, 12 F.3d 1008 (11th Cir.1994); *Mendoza v. Temple–Inland Mortgage Corp. (In re Mendoza)*, 111 F.3d 1264 (5th Cir.1997).

*Hoggle* involves debtors in three different bankruptcy cases involving the same mort-

---

3. Sections 1322(a) and (b) provide in pertinent part:

§ 1322. Contents of plan.

(a) The plan shall—

(1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and· control of the trustee as is necessary for the execution of the plan;

(2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim; and

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

(b) Subject to subsections (a) and (c) of this section, the plan may—...

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of. holders of any class of claims;...

(3) provide for the curing or waiving of any default;...

(5) notwithstanding paragraph (2) of this subsection,' provide for the curing of any default within a reasonable time and mainte-. nance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

4. § 1323. Modification of plan before confirmation.

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected, as the case may be, the plan as modified, unless the modification provides for a change iri the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.

5. Section 1325 provides in pertinent part:

§ 1325. Confirmation of plan.

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

(2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

(b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

(2) The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved.

(c) A plan modified under this section may not provide for payments over a period that expires after three years after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period but the court may not approve a period that expires after five years after such time.

gage creditor. In all cases, the debtors were past due in paying the mortgage creditor at the time of their bankruptcy filings and agreed to cure their pre-petition arrearages through confirmed Chapter 13 plans. However, the debtors failed to make the required mortgage payments in accordance with plan terms,[6] causing the mortgage creditor to seek relief from stay to foreclose its liens. The Bankruptcy Court denied the creditor's requests for relief from stay, instead modifying the confirmed plans to cure the post-confirmation arrearages. The creditor appealed and the District Court affirmed.

Before the Eleventh Circuit Court of Appeals, the parties made the same arguments advanced in this matter. The Eleventh Circuit concluded that both the express language of § 1322(b) and the general policy underlying § 1329 allows modifications to confirmed plans for the purpose of curing post-confirmation arrearages. Analyzing § 1322(b), the court concluded that:

> [S]ection 1322(b)(5) expressly authorizes plans to provide for the timely curing of any default and maintenance of payments during the life of the plan. Section 1322(b)(5) clearly states that a plan may provide for the curing of any default. Congress could have easily inserted the word pre-petition to modify default but failed to do so. The omission is significant. The plain meaning of § 1322(b)(5) permits cure of any default whether occurring prior to the filing of the petition or subsequent to confirmation of the plan.

*Hoggle* at 1010.

The Court also concluded that the language in § 1322(b)(5) is consistent with the legislative history of § 1329:

> Congress designed § 1329 to permit modification of a plan due to changed circumstances of the debtor unforeseen at the time of confirmation. The House Report suggests that modification is permissible where problems such as a "natural disaster, a long-term layoff, or family illness or

accident with attendant medical bills" prevent compliance with the original plan. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 125 (1977). Fueling the creation of flexible modification provisions was the simple recognition that "[t]he problems which cause financial distress to begin with, . . . do not magically disappear on the filing of a petition under Chapter XIII." S.Rep. No. 95–989, 95th Cong., 2d Sess. 12 (1978).

*Id.* at 1011.

. The holding in *Hoggle*, however, does not mandate approval of all proposed modifications to confirmed plans to cure post-confirmation arrearages. The court cautions that any post-confirmation modification must comport with the other provisions of § 1322(b)(5) which require that the cure be effected within a reasonable period of time and that a debtor simultaneously maintain payments on any long-term loan. *Id.* at 1011.

*Mendoza* arises in a slightly different context.[7] However, the Fifth Circuit adopted the *Hoggle* reasoning including the limitation that modification to cure post-petition arrearages be effected within a reasonable time and that payments on long-term debt be kept current. Since *Hoggle*, more limitations to a debtor's ability to modify a confirmed plan have emerged. The Eleventh Circuit Court of Appeals denied modification of a Chapter 13 plan to cure post-confirmation defaults in mortgage payments where the right to cure had expired under state law. *Commercial Federal Mortgage Corp. v. Smith (In re Smith)*, 85 F.3d 1555 (11th Cir.1996). Bankruptcy courts have precluded post-confirmation modification to include post-petition debt in an existing Chapter 13 plan over the creditor's objection (*In re Haith*, 193 B.R. 341 (Bankr.N.D.Ala.1995)) and required a debtor to show that a post-confirmation default was due to circumstances unforeseen and reasonably unforeseeable at the time of confirmation when a creditor objects to the post-confirmation modification (*In re Steele*, 182 B.R. 284 (Bankr.W.D.Okla.1995)).

---

**6.** It is unclear from the opinion whether the mortgage creditors were to be paid through or outside the plan.

**7.** In *Mendoza,* the bankruptcy court ordered a Chapter 13 plan modified to cure post-confirmation arrearage by requiring payment of arrearages directly to a mortgage lender over the objection of the debtor. The debtor appealed.

■ Chase Manhattan has proffered no authority contrary to *Hoggle*, and this Court has been unable to find binding authority on this issue within the Tenth Circuit. The careful analyses of the courts in *Hoggle*, *Mendoza*, and subsequent opinions persuade me that although modification of a Chapter 13 plan to cure a post-confirmation default is not specifically authorized by the Code, it is not precluded. For such post-confirmation modification to be approved, it must comport with the other applicable provisions of the Code. Thus, the focus of the inquiry is upon whether the proposed modification satisfies the original confirmation requirements referenced in § 1329. For example:

1. Is the proposed modification made in good faith? § 1329(b)(1); § 1325(a)(3).

2. If the plan is modified, will the debtor be able to make all payments under the plan? § 1329(b)(1); § 1325(a)(6).

3. Is the proposed cure made over a reasonable period of time while payments to the objecting creditor are kept current? § 1329(b)(1); § 1322(b)(5).

4. Is the proposed extension of the plan justified? § 1329(c).

■ There is no dispute that the Debtor's proposed modification is made in good faith and that cure of the arrearage to Chase Manhattan could not be accomplished without an extension of the plan from 36 to 60 months. However, the reasonableness of the period to cure the arrearage and the feasibility of the plan, as modified, are problematic.

The proposed modification would cure of the Debtor's post-petition arrearage over a 52-month period. In any circumstance, 52 months is an extraordinarily long period of time to cure an arrearage of mortgage payments. It not only delays payment to the creditor, it increases the cost of the financing to the Debtor because interest accrues on the unpaid balance for the entire cure period.

This lengthy cure period is necessitated by the Debtor's precarious financial condition which has been longstanding and continuous. The Debtor has no equity in her home, having bought it only three months before seeking bankruptcy protection. Prior to purchasing the residence, she apparently leased a home, for which a lessor has filed a proof of claim for two months non-payment of rent and damage to the premises. Since purchase of the residence, the Debtor has made only 5 of 14 required monthly payments.

The Debtor's budget at the time of confirmation of her plan was noticeably tight. She was dependent upon regular receipt of child support payments to cover her expenses. To generate the $120.00 per month surplus necessary to fund the plan, she projected unusually low expenses for a family of four. Her budget had no cushion for unanticipated expenses or fluctuation in income. As a result, the interruption of child support payments and unanticipated medical expenses required her to divert over $9,000.00 allocated for mortgage payments.

The Debtor's current budget is even leaner. On the income side, her monthly child support payment has been reduced by $400.00 and is not reviewable until July 1999. Although she hopes to receive an increase in her compensation, she does not know whether, when, or what increase might be forthcoming. Therefore, she intends to fund the increase in monthly payments for months 38 through 60 by redirecting the monies she is currently using to make car payments. Such proposal appears highly idealistic, given that the Debtor's only vehicle is a Jeep Cherokee with 98,000 miles at the time of the bankruptcy filing, one year ago. Without means to replace the vehicle, the Debtor will have to retain it for another four years. During such time she has allocated only $30.00 per month ($360.00 per year) for gas, oil, maintenance and repair costs. Given the vehicle's use and age, this is unrealistic.

Other expenses also appear to be significantly underestimated. The Debtor's obligation to Chase Manhattan is subject to an interest rate adjustment in October 1998 and each year thereafter, but the plan does not anticipate any change in the PITI payments for the next four years. The Debtor has allowed only $300.00 per year for clothing for herself and three growing children, as well as only $240.00 annually for home maintenance and repair. Her estimate of $30.00 per month for medical or dental expenses has already proven to be inadequate. This plan,

like its predecessor, includes no financial cushion to absorb any miscalculated or unanticipated expense.

The Debtor's effort to "tighten her belt" in order to fund her plan is commendable, but such good intentions do not change the economic facts of life. The Debtor's financial resources are simply too limited and unpredictable to make the proposed modification feasible or to justify cure of the existing arrearage over the next 52 months. Approval of the proposed modification must therefore be denied.

## B. Can a creditor obtain relief from stay for post-confirmation payment defaults, or is a creditor restricted to dismissal or conversion of the case for a material default in performance of the plan?

The Court also has been unable to find binding authority in the Tenth Circuit with regard to this issue. Within the District of Colorado, there are three divergent approaches. In *In re Nicholson*, 70 B.R. 398 (Bankr.D.Colo.1987), Chief Judge Charles E. Matheson held that the automatic stay imposed by 11 U.S.C. § 362(a) was lifted upon confirmation of a Chapter 13 plan providing for revestment of estate assets in a debtor. Therefore, a creditor secured by a lien on the debtor's assets was free to foreclose for post-confirmation defaults in payment without seeking relief from stay.

In *Mellon Financial Services Corp. # 9 v. Broman (In re Broman)*, 82 B.R. 581 (Bankr.D.Colo.1988), Judge Roland J. Brumbaugh held that the automatic stay continued after plan confirmation but that relief from stay was unavailable to a creditor based on a debtor's post-confirmation defaults.[8] He reasoned that such relief would "prefer that creditor over all other creditors contrary to 11 U.S.C. § 1327(a)." *Broman* at 582. To preserve equitable treatment of all creditors, the only remedy available to a creditor who has not received post-confirmation payments is dismissal or conversion of the case.

A third approach was taken by Judge Donald E. Cordova in *In re Hutchinson*, Case No. 92–18031 DEC (Bankr.D.Colo.1993). Following *Broman*, a creditor sought dismissal of a Chapter 13 case due to the debtor's post-confirmation failure to maintain insurance on a vehicle subject to the creditor's lien. Judge Cordova denied the motion for dismissal, instead granting relief from the automatic stay. He reasoned that although the automatic stay continues after plan confirmation, where a post-confirmation default does not affect the viability of the plan, the creditor should be granted relief from stay rather than dismissing or converting the case. Dismissal or conversion grants too much power to a single creditor and would result in the proverbial "baby being thrown out with the bath water."

> In a case such as the one at bar, this would mean that the debtor would be unable to complete her plan, to the detriment of her unsecured creditors, simply because she had not provided proof of insurance on her vehicle. It would be inappropriate for this court to permit one secured creditor to derail an entire Chapter 13 plan, and undermine other creditors' chances of being paid through that plan, when the clear language of § 362(c) and § 327(a) provide the opportunity for relief from stay and results much more amenable to the spirit results [sic] of the Bankruptcy Code.

I have considered the thoughtful analysis of each opinion. Given the facts of this case, I respectfully disagree with the holdings of *Nicholson* and *Broman* and adopt the approach utilized in *Hutchinson*.

■ According to my reading of the Code, the automatic stay continues in effect even after confirmation of a Chapter 13 plan which revests property of the estate in the debtor. The automatic stay prevents collection of pre-petition debts from and enforcement of liens against the debtor (§ 362(a)(2), (6), (7), and (8)), property of the estate (§ 362(a)(3) and (4)), and property of the debtor (§ 362(a)(5)). As to property of the estate, the stay continues until the property ceases

---

8. *Broman* follows the reasoning of two earlier decisions, *Estes v. Garcia (In re Garcia)*, 42 B.R. 33 (Bankr.D.Colo.1984), and *Arvada 1st Industri-* *al Bank v. Richardson (In re Richardson)*, Case No. 81–K–2211 (Bankr.D.Colo. Oct. 29, 1981) (Kane, J.).

to be property of the estate (11 U.S.C. § 362(c)(1)), but as to the debtor or debtor's property, the stay continues until the case is closed, dismissed, or discharge is entered, whichever occurs first. 11 U.S.C. 362(c)(2). Thus, confirmation of a plan which revests estate property in the debtor terminates the stay as to property of the estate, but the stay nevertheless continues to protect the debtor and the debtor's property until the case is closed, dismissed, or a discharge order is entered.

■ I agree with the reasoning in *Broman* that the purpose of Chapter 13 is to comprehensively deal with claims of all creditors in accordance with statutory mandates, and that pursuant to 11 U.S.C. § 1327(a), a confirmed plan binds the debtor and all creditors. However, the provisions of §§ 1322 and 1325 permit, and in some cases mandate, preferred treatment for some creditors. For example, § 1322(b)(2) precludes modification of the rights of creditors such as Chase Manhattan which holds long-term debt secured only by a lien against the debtor's residence. With regard to long-term mortgage creditors, § 1322(b)(5), a debtor may cure arrearages over a reasonable time, but must keep current with regard to all other obligations. In contrast, the obligations of a debtor to unsecured creditors and creditors secured other than by the debtor's residence may be modified. Creditors may receive preferential treatment so long as each claim within a particular class receives the same treatment (11 U.S.C. § 1322(a)(3)), unsecured creditors receive at least that which they would have received in a Chapter 7 case (11 U.S.C. § 1325(a)(5)), and secured creditors accept or are protected with continuing liens and payout of the value of their collateral (11 U.S.C. § 1325(a)(4)) in the event of plan objection (11 U.S.C. § 1325(b)(1)). Within these guidelines, the debtor has great latitude to propose a comprehensive plan to which all creditors can object. The confirmed plan is the comprehensive arrangement which § 1327 provides is binding upon the debtor and all creditors. Granting a creditor relief from the automatic stay for post-confirmation defaults is not precluded by any Code provision and is not inconsistent with § 1327 so long as such relief is consistent with the provisions of the confirmed plan.

Payment of creditors "outside the plan" is a device often used to avoid the Chapter 13 Trustee's commission on such payments, but it may have other purposes and effects. For example, it is particularly appropriate for treatment of long-term mortgage claims which cannot be modified. Payment "outside the plan" returns the debtor and creditor to the terms of their original transaction, subject to the automatic stay. Implicitly, the debtor agrees to perform all of his/her contractual obligations to the creditor. This may require the debtor to perform a host of obligations such as maintaining insurance and paying monthly installments as they come due.

Chase Manhattan holds a long-term debt not subject to modification and the Debtor has no equity in her residence. Payment of Chase Manhattan "outside the plan" certainly prefers Chase Manhattan over other creditors, but the preferred treatment is consistent with § 1322(b)(2). The creditors had the opportunity to object to such treatment and by virtue of confirmation of the plan are now bound by its terms. Granting relief from stay for Debtor's default in performance of post-confirmation obligations to Chase Manhattan does not upset the plan; it implements it.

To restrict Chase Manhattan to dismissal or conversion of this case would be inconsistent with the plan terms, as well as the purpose of Chapter 13. Denial of relief from stay would be contrary to the implicit meaning of "payment outside the plan" reinstatement of the terms and conditions of the original transaction. Dismissal or conversion of the case would also be contrary to the expectations of the Debtor and other creditors paid through the plan. As eloquently stated by Judge Cordova in *Hutchinson:*

> Unfair treatment of creditors may also result from the dismissal or conversion of the case pursuant to a creditor's motion. Permitting a creditor to proceed against property, while allowing the remaining provisions of the confirmed plan to provide payment for other creditors, offers a more

reliable method of achieving the goals of § 1327(a). Dismissal or conversion merely ensures that the debtor's assets will be liquidated with little hope of return for unsecured creditors.

 Cause exists for granting Chase Manhattan's Motion for Relief from Stay. The Debtor has defaulted in making 9 of 14 post-petition monthly payments. She has no current ability to cure the payments, no equity in the property securing the obligation, and has not demonstrated that such property is necessary to performance under her Chapter 13 plan.[9]

## V. CONCLUSION

Where a creditor is permissibly "paid outside a Chapter 13 plan," the policies of Chapter 13 and the provisions of the confirmed plan may be best served by granting the creditor relief from automatic stay for post-confirmation defaults. For these reasons,

**IT IS HEREBY ORDERED** that:

1. Debtor's Motion to Modify Confirmed Chapter 13 Plan is **DENIED.**

2. The Motion of Chase Manhattan Mortgage Corporation for Relief from Automatic Stay is **GRANTED.** Chase Manhattan Mortgage Corporation is granted relief from automatic stay to foreclose upon and or take possession and control of the property described as Lot 37, Block 7, Hillsborough North, County of Boulder, State of Colorado, but not to seek to enforce any judgment Chase Manhattan Mortgage Corporation may obtain against the Debtor personally or against the Debtor's post-petition property.

---

**9.** There may be circumstances where a residence is necessary for the debtor's performance under the plan. For example, if a debtor has equity in the property or the debtor's mortgage payments are *significantly less than the cost of renting* a residence. Here, the Debtor testified that if she lost her house in foreclosure she would be forced to rent again, *perhaps* at a higher cost than her current payments to Chase Manhattan. However, no evidence was presented that the Debtor cannot obtain rental housing at a cost equal to or less than her current payments. Indeed, the Debtor could use the certified funds proffered at the hearing as a security deposit for retaining an apartment/house and as a cushion against future unanticipated expenses.