**In re Jerry Bevan ROUSE, Deborah Lynn Rouse, Debtors.**

**No. 03–20684 HRT.**

United States Bankruptcy Court, D. Colorado.

Sept. 24, 2003.

Gary E. Filosa, Northglenn, CO, for debtors.

Janice A. Steinle, Highlands Ranch, CO, trustee.

Sally Zeman, Denver, CO, Chapter 13 Trustee.

### ORDER RE: REQUEST AND MOTION FOR RELIEF FROM STAY OF ENFORCEMENT OF LIEN OR SECURITY INTEREST HELD BY NORTH VALLEY BANK

HOWARD R. TALLMAN, Bankruptcy Judge.

This case comes before the Court on North Valley Bank's Request and Motion for Relief from Stay of Enforcement of Lien or Security Interest Held by North Valley Bank. The matter came on for hearing on September 22, 2003. After presentation of evidence by the Movant and the Debtors, the Court took the matter under advisement. The Court has reviewed and considered the evidence presented, arguments of counsel and the court file and is now ready to rule.

The Court finds that Debtors are obligors on a home equity line of credit with North Valley Bank [the "Bank"]. The note is dated August 21, 2000, in the maximum amount of $10,000.00. The home equity line is secured by a junior deed of trust on real estate owned by the Debtors and located at 2620 W. 80th Avenue, Denver, Colorado 80221. That real estate is the Debtors' home and is occupied by themselves and their two children. The Debtors are in default in their obligations to the Bank and the Bank has commenced foreclosure of the above described real property. The sale of the property by the public trustee was scheduled to occur on June 4, 2003. Debtors filed a voluntary petition under Chapter 7 on June 3, 2003. The automatic stay prevented the foreclosure sale from going forward as planned, and on July 31, 2003, the Bank filed the instant motion seeking relief from stay to allow it to go forward with its foreclosure sale. On September 2, 2003, Debtors filed their motion to convert their case from chapter 7 to chapter 13. The Court granted that motion on September 4, 2003. Debtors filed their chapter 13 plan of reorganization on September 19, 2003, which purports to provide for full payment of the debt owed to the Bank. The Debtors' income consists of $896.40 per month of net earned income received by Mrs. Rouse for survey and data entry work done out of the Debtors' home and $1,481.00 social security income received by Mr. Rouse and the children on account of Mr. Rouse's disability.

The Debtors' schedules reflect that the value of their home is $165,000.00 and that it secures the debt to the Bank in the approximate amount of $13,000.00 in addition to the first mortgage debt of $96,597.79. Therefore, the Court finds, for the purposes of this proceeding, that the secured creditors enjoy an equity cushion of approximately $55,000.00.

The evidence presented demonstrates that Debtors intentionally used false social security numbers on the loan application which they filed with the Bank in order to obtain the home equity line of credit. Although the Debtors testified that the substitution of incorrect social security numbers for their own on the loan applications was accidental, the Court did not find

Debtors' testimony on that point to be credible. The evidence also demonstrates that the Bank ran a credit check under the social security number supplied by Mr. Rouse and the credit history came back under a different name. The Bank's loan officer relied on oral statements by Mr. Rouse to the effect that, even thought the name on the credit history was other than Mr. Rouses' name, the credit information reflected therein was his credit information.

The Bank takes the position that Debtors demonstrated bad faith, if not outright fraud, in procuring their home equity line and that such pre-petition behavior constitutes cause under 11 U.S.C. § 362(d)(1) for lifting of the automatic stay in this chapter 13 case. Debtors respond that such cause does not exist because they have now filed a reorganization plan under which the Bank will be paid 100% of the debt owed to it and that the Bank is adequately protected by an equity cushion in the property. Notably absent from the presentations of counsel was any citation to authority supporting either position.

The Bank argues that the Court should lift the automatic stay on the basis of the Debtor's bad faith and that the following factors are indicative of bad faith in this case: 1) the real estate is Debtors' sole asset; 2) there are few unsecured debts; 3) the Debtors' sole asset is subject to a foreclosure action; 4) the bankruptcy case was filed to stop the foreclosure proceedings; and 5) Debtors' financial problems involve primarily disputes between the Debtors and their secured creditors.

The Court disagrees that the factors listed by the Bank constitute an adequate test of bad faith in the context of a motion for stay relief under 11 U.S.C. § 362(d)(1) in a consumer chapter 13 case. Application of the Bank's test would result in dismissal of many of the chapter 13 cases filed in this court. It is commonplace that a debtor's home is their primary asset of value. Frequently consumer chapter 13 cases are filed on the eve of foreclosure and frequently a chapter 13 debtor's primary financial issue revolves around a default in the debt owed to the foreclosing secured creditor. In addition, with respect to those factors, the Court reaches different conclusions than the Bank. Certainly this case was filed on the eve of a foreclosure action. But, the Debtors do have substantial unsecured debt. Their schedule F (original plus amended) shows $65,339.00 in unsecured debts. Thus, it does not appear that Debtors' primary financial issues revolve around their secured debt. Furthermore, while the home is Debtors' most substantial asset, it is far from their only asset as can be ascertained by reference to Debtors' schedule B listing of their personal property. With respect to the type of debts owed by the Debtors, their assets and the timing of their bankruptcy filing, these Debtors are utterly typical of chapter 13 debtors generally.

The factors cited by the Bank are similar to factors listed in the case of *Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Virginia*, 849 F.2d 1393, 1394 (11th Cir.1988). Those were often used to analyze a motion for stay relief filed in chapter 11 business cases involving a single real estate asset prior to the Bankruptcy Reform Act of 1994. But that Act added special provisions relative to single asset real estate, so that viability of those factors, even in that context, is in doubt. *See In re Villamont–Oxford Associates Ltd. Partnership*, 230 B.R. 457 (Bankr.M.D.Fla.1998), *In re Jacksonville Riverfront Development, Ltd.*, 215 B.R. 239 (Bankr.M.D.Fla.1997). Thus, the Court finds that the test proposed by the Bank is inapposite to the case at bar.

The Bankruptcy Appellate Panel for the Tenth Circuit has described "cause" under 11 U.S.C. § 362(d)(1) as follows:

Under § 362(d)(1) stay relief may be granted for cause. While cause under § 362(d)(1) includes "the lack of adequate protection of an interest in property," it is not so limited. Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis.

*In re Busch,* 294 B.R. 137, 140 (10th Cir. BAP 2003) (internal citation omitted); *see also Pursifull v. Eakin,* 814 F.2d 1501, 1506 (10th Cir.1987). Ultimately, the Court must apply a balancing test to weigh the hardships suffered by the creditor under the automatic stay against those suffered by the Debtors' if the stay is lifted. *See, e.g., In re Caldwell,* 101 B.R. 728, 732 (Bankr.D.Utah 1989); *In re Opelika Mfg. Corp.,* 66 B.R. 444, 449 (Bankr.N.D.Ill. 1986).

The Court finds that the Bank is not harmed by the continuation of the automatic stay. In this Court's experience, most mortgage holders in chapter 13 cases do not enjoy the $55,000.00 equity cushion which the Bank has in this case. That equity cushion means that the Bank's interest in Debtors' property is well protected. Real estate is generally an appreciating asset, and the Court has no evidence before it to believe otherwise in this case. Consequently, through appreciation and through payments made pursuant to Debtors' plan, the Bank can expect its position to improve during the pendency of the Debtors' plan. Conversely, the Debtors would be greatly harmed by the lifting of the stay. It is their family home. It is the base of operations for Mrs. Rouse's employment which is conducted out of the home. The Debtors report on their schedule J that they make combined payments of $792.00 per month on their mortgages. Mrs. Rouse testified, and the Court believes, that Debtors could not come close to replacing their current lodgings on the rental market for $792.00 per month. After balancing the equities in this case, the Court must find that the Bank has not met its burden to demonstrate that cause exists to justify lifting the stay pursuant to 11 U.S.C. § 362(d)(1).

Even if worse comes to worst, and Debtors' plan fails, the Bank's interest is well protected. Unlike a case which is originally filed under chapter 13, these Debtors do not have the absolute right to voluntarily dismiss their case. 11 U.S.C. § 1307(b). Consequently, if the Debtors fail to comply with their plan, the case would most likely be converted by the Court back to chapter 7. A chapter 7 trustee would then decide whether it is in the estate's interest to market the property or abandon it. If a chapter 7 trustee were to sell this property, the Bank would be paid in full. If a chapter 7 trustee were to abandon the property, the Bank would be free to foreclose its interest. In either case, the Bank is in an unusually strong position with the equity cushion that it enjoys in this property.

As the Court observed, the circumstances of this case are fairly typical of chapter 13 cases generally. What is not necessarily typical is the allegation of prepetition fraudulent behavior. However, the Court does not need to make a determination as to whether or not Debtors procured the loan from the Bank fraudulently. In a chapter 13 case, the Court does not focus its inquiry on past behavior, but on the balancing of the hardships to the parties involved under the Debtor's proposed plan in the context of the facts of the individual case. Chapter 13 offers a "super-discharge" from debts incurred

through fraud, as well as other bad acts, 11 U.S.C. § 1328(a). Even debtors who are liable for debts which could not be discharged in a chapter 7 case, due to the debtor's pre-petition bad conduct, may receive a discharge through a chapter 13 plan which complies with all of the applicable requirements of the Bankruptcy Code. Thus, it would be a curious result indeed for Congress to offer a chapter 13 discharge to those who had engaged in pre-petition fraudulent conduct with one hand, but take that opportunity away with the other hand by granting relief from stay based upon the same conduct. *See In re Kowalsky,* 235 B.R. 590, 595 (Bankr. E.D.Tex.1999) ("The Court finds that the Movant's allegation that the Debtors fraudulently induced the Movant to extend credit for the vehicle, even if true, is insufficient to make a prima facie showing of cause for granting relief from the stay. This is particularly true in a Chapter 13 case such as this in which a debt, even if arising from a debtor's fraudulent act, will be dischargeable upon completion of a confirmed Chapter 13 plan.").

Congress clearly thought it important enough to encourage debtors to repay their creditors in chapter 13 that it gave even debtors who are guilty of pre-petition bad conduct an opportunity for a second chance in chapter 13. These Debtors will get their second chance. It will not be an easy road. Their plan must provide for ongoing payments to their mortgage holders pursuant to their loan contracts and, at the same time, provide for a complete cure of the arrearage on those obligations. Failure to make ongoing mortgage payments outside of the plan, in many cases, will establish cause for relief from stay under 11 U.S.C. § 362(d)(1). *See, e.g., In re Dupell,* 235 B.R. 783, 788 (Bankr. E.D.Pa.1999); *In re Binder,* 224 B.R. 483, 491 (Bankr.D.Colo.1998). Failure to make plan payments to the Trustee is grounds for dismissal or conversion of the chapter 13 case. 11 U.S.C. § 1307(c); *see, e.g., In re Nosker,* 267 B.R. 555, 562 (Bankr. S.D.Ohio 2001). Other actions which are indicative of bad faith with respect to the execution of Debtor's chapter 13 plan are also grounds for dismissal or conversion of a chapter 13 case. *See, e.g., Howard v. Lexington Investments, Inc.,* 284 F.3d 320, 323 (1st Cir.2002); *In re Cabral,* 285 B.R. 563, 572 (1st Cir. BAP 2002). The road to financial rehabilitation under chapter 13 is strewn with obstacles for debtors who are not fully cognizant of the very generous opportunity provided to them by the Bankruptcy Code and are not committed to that rehabilitative process. The Court is hopeful that these Debtors are prepared to navigate that road in good faith.

THEREFORE, it is ORDERED that North Valley Bank's Motion for Relief From Stay is DENIED.