**In re Doodnauth RAMKARAN.**

**The Fairville Company, L.P., Appellant,**

**v.**

**Doodnauth Ramkaran, Appellee.**

**No. CIV.A.DKC 2004–2007.**

United States District Court,
D. Maryland.

Oct. 7, 2004.

Stuart R. Blatt, Towson, MD, for Plaintiff.

Barbara Gail Curry, Pro Se.

Alvin George Curry, Pro Se.

## MEMORANDUM OPINION

CHASANOW, District Judge.

This case is before the court on appeal from the order of Bankruptcy Judge Paul Mannes, denying the motion of Appellant creditor The Fairville Company for relief from the automatic stay imposed, pursuant to 11 U.S.C. § 362(a), in the Chapter 13 bankruptcy of Appellee debtor Doodnauth Ramkaran. Oral argument is deemed unnecessary because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. Bankr.P. 8012. For the reasons that follow, the court will affirm the bankruptcy court's ruling.

## I. Background

When a Chapter 13 bankruptcy petition is filed, most actions against the debtor, including acts to perfect or enforce any lien against property of the debtor's estate, are automatically stayed. *See* 11 U.S.C. § 362(a)(4). The automatic stay gives the bankruptcy court an opportunity to harmonize the interests of both debtor and creditors while preserving the debtor's assets for subsequent repayment and reorganization of his or her obligations. *In re Robbins*, 964 F.2d 342, 345 (4th Cir.1992).

Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1), pro-

vides that the bankruptcy court may lift the stay "for cause." [1] The Code, however, provides no definition of what constitutes "cause," so courts must determine whether relief is appropriate on a case-by-case basis. *In re Robbins*, 964 F.2d at 345. The decision to lift an automatic stay under Section 362 is within the discretion of the bankruptcy judge. *Id.*

In April 2001, Appellee Doodnauth Ramkaran purchased a dump truck ("the Truck") from Elliott Wilson Trucks for use in his dump trucking business, "Ram's Trucking." Purchase of the Truck was financed with a secured loan of $133,000 from Appellant The Fairville Company. Appellee signed a security agreement and a personal guaranty for repayment. A second personal guaranty was to be signed by Mrs. Ramkaran as a condition of the loan. Unbeknownst to Appellant, however, Appellee signed his wife's name to the second guaranty; Mrs. Ramkaran did not sign.

It is disputed whether Sam Keaton, the employee of Elliott Wilson Trucks who provided to Appellee the paperwork for the loan, encouraged Appellee to sign for his wife. Appellee alleges that he telephoned his wife, and, after obtaining her permission, signed his wife's name instead of procuring her signature, "in front, and with the blessing of [sic] Mr. Keaton." Paper no. 5, at 5. Appellant, on the other hand, alleges that Mr. Keaton "did not tell Mr. Ramkaran to sign his wife's signature," that Mr. Keaton "would not have done the deal had he known it," and that

"Mr. Ramkaran pulled a hoodwink on … Mr. Keaton." Tr. at 4, 6.

In August 2003, Appellee filed a Chapter 13 bankruptcy petition. Appellee then filed a motion to value collateral on the Truck, asserting an appraised value of $71,550. Appellant did not contest this valuation, allegedly because it believed itself to be adequately protected for the full balance of the loan by the personal guaranty of Mrs. Ramkaran.

Appellee's bankruptcy plan was confirmed by the bankruptcy court in March 2004. Appellee had made regular payments to Appellant until March 2004, but then ceased direct payments to Appellant in accordance with his bankruptcy plan. Appellant estimates that at that time, Appellee still owed approximately $90,000 on the loan. *See* Tr. at 6.

Shortly after confirmation of the bankruptcy plan, Appellant contacted Mrs. Ramkaran to initiate collection from her in accordance with her personal guaranty. Mrs. Ramkaran informed Appellant that her husband, and not she, had signed her name to the guaranty, and that she would not guarantee the loan. In April 2004, Appellant filed a motion for relief from the stay.[2] In May 2004, the bankruptcy court denied Appellant's motion, reasoning that other creditors would be hurt if he were to lift the stay. *See* Tr. at 12. Appellant then appealed to this court.

## II. Standard of Review

▬ When a district court reviews a bankruptcy court's decision to decline to lift an automatic stay, the district court

---

**1.** Section 362(d)(1) provides:
 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

**2.** Appellant's motion also requested, alternatively, if applicable, for relief from co-debtor stay. That issue is not relevant here.

acts as an appellate court, reviewing the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. See *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992); *Travelers Ins. Co. v. Bryson Prop., XVIII (In re Bryson Prop., XVIII)*, 961 F.2d 496, 499 (4th Cir.), *cert. denied sub nom., Bryson Prop., XVIII v. Travelers Ins. Co.*, 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *Consumer Prot. Div., Office of the AG v. Luskin's, Inc. (In re Luskin's, Inc.)*, 213 B.R. 107, 110 (D.Md.1997). The law is well-settled that a bankruptcy court's discretionary determination on whether to lift an automatic stay will be overturned only upon a showing of abuse of that discretion. *In re Luskin's, Inc.*, 213 B.R. at 110 (quoting *Frederick County Nat'l Bank v. Lazerow*, 139 B.R. 802, 804 (D.Md.1992)); *see Claughton v. Mixson*, 33 F.3d 4, 5 (4th Cir.1994) ("We will reverse a decision to lift the automatic stay 'for cause' only when an abuse of discretion has occurred.") (citing *In re Robbins*, 964 F.2d at 345).

Abuse of discretion analysis in this context was explained in *McDow v. Official Comm. of Equity Sec. Holders of Criimi Mae, Inc. (In re Criimi Mae, Inc.)*, 247 B.R. 146, 151 (D.Md.1999):

> An abuse of discretion occurs only when the bankruptcy court relies upon clearly erroneous findings of fact or uses an erroneous legal standard. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir.1999). However, even if a bankruptcy court applies the correct legal principles to adequately supported facts, the discretion of the bankruptcy judge "is not boundless and subject to automatic affirmance." *Id.* (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 506 (4th Cir.1977)). "This court is obligated to review the record and reasons offered by the [bankruptcy] court and to reverse if the 'court has a definite

and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *Id.* (quoting *Wilson*, 561 F.2d at 506).

### III. Analysis

 When deciding whether cause has been shown, "the court must balance potential prejudice to the bankruptcy debtor's estate against the hardships that will be incurred by the person seeking relief from the automatic stay if relief is denied." *In re Robbins*, 964 F.2d at 345 (citing *In re Peterson*, 116 B.R. 247, 249 (D.Colo.1990)). Here, the Judge Mannes' ruling indicates that he concluded that the potential for hardship to Appellee's other creditors outweighed any potential prejudice to Appellant.

The bankruptcy court concluded that the rights of other creditors would be seriously harmed if Appellant were allowed to foreclose on the Truck at this time. See Tr. at 12 ("if the Court relieves the stay the Chapter 13 is gone and other creditors are going to be hurt too."). This finding of fact was not clear error. Ram's Trucking's "fleet" consists of two dump trucks and a pickup truck. If the court were to lift the stay, Appellant would foreclose on the Truck, with obviously likely dire consequences for Appellee's business, and therefore for his ability to meet his obligations under the confirmed bankruptcy plan.

Against this likelihood, the court was to balance "the hardships that will be incurred by [Appellant] if relief is denied." *In re Robbins*, 964 F.2d at 345. Appellant, however, did not then and has not since asserted any significant hardship. Appellant's loan is secured by a first priority, perfected lien in the Truck. At best, Appellant will be repaid through Appellee's bankruptcy plan payments; at worst, Ap-

pellant will have to wait before recovering the Truck. If necessary, Appellant can pursue a separate claim against Mrs. Ramkaran. In sum, it is not unreasonable to surmise that this hardship is not as great as that imposed on Ram's Trucking by the loss of one of its two dump trucks. Therefore the bankruptcy court did not abuse its discretion in concluding that the balance of hardships favored denying Appellant's motion for relief from the stay.

Appellant, however, argues that the court should nonetheless lift the automatic stay because Appellee's bad faith constitutes cause under § 362(d)(1). Specifically, Appellant contends it was defrauded by Appellee, in that it would never have loaned Appellee the money had Mrs. Ramkaran not signed as a personal guarantor. Appellant further argues that Appellee and Mrs. Ramkaran defrauded Appellant a second time by waiting until after the "cram down" collateral valuation of the truck before revealing the forgery.

■ Bad faith in filing for bankruptcy is sometimes grounds for lifting an automatic stay under Section 362, but a finding of bad faith alone does not constitute *per se* cause for relief from a stay. More than twenty years ago, the bankruptcy court wrote that "[c]ourts have concluded that a lack of good faith or misconduct in filing a petition under Chapter 11 entitles a secured creditor to relief from the stay of § 362." *In re Corporation Deja Vu*, 34 B.R. 845, 846 (Bankr.D.Md.1983) (Mannes, J.) (citing cases). In *Corporation Deja Vu*, the court granted relief from the stay because it concluded that the entire bankruptcy petition was a sham:

> Clearly, the debtor [entity] was created for the sole purpose of buying time for its principal to broker the transaction. Reorganization was neither contemplated nor possible. The petition was filed in bad faith. This bad faith constitutes

cause to allow the secured creditor relief from the stay.

*Id.* at 850. The Fourth Circuit later pronounced that bad faith could be used as a basis for invalidating bankruptcy filings, but only sparingly:

> [W]e hold that a bankruptcy court may dismiss such a petition for want of good faith in its filing, but only with great caution and upon supportable findings both of the objective futility of any possible reorganization and the subjective bad faith of the petitioner in invoking this form of bankruptcy protection.

*Carolin Corp. v. Miller*, 886 F.2d 693, 694 (4th Cir.1989). While that pronouncement concerned dismissal of bankruptcy petitions under Section 1112(b) of the Code, the *Carolin* court plainly believed that the same cautious standard should also be applied to relief from an automatic stay under Section 362:

> Just as § 1112(b) inferentially permits inquiry into a debtor's good faith in the context of an interested party's motion to dismiss, § 362(d)(1)'s "for cause" language authorizes the court to determine whether, with respect to the interests of a creditor seeking relief, a debtor has sought the protection of the automatic stay in good faith.

*Id.* at 699 (citations omitted). Other authorities have agreed that *Carolin's* strict standard for the use of bad faith as a basis for dismissal applies equally to Section 362 stays, finding "no substantive difference between the cause requirement for dismissal of a petition under Section 1112(b) and the cause requirement for relief from an automatic stay under Section 362(d)(1)." *Laguna Assocs. Ltd. Pshp. v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. Pshp.)*, 30 F.3d 734, 737–38 (6th Cir.1994) (citing *Carolin*); 3 L. King et al., Collier on Bankruptcy, P 362.07[6][a] at 362–105 (15th ed. rev.2002) (quoting *Laguna*); *see,*

*e.g., In re Long Bay Dunes Homeowners Ass'n,* 246 B.R. 801, 806 (Bankr.D.S.C. 1999) (applying same *Carolin* test to requests for dismissal and relief from stay). Such limits on the use of bad faith as a basis for attacking bankruptcy filings are commonly accepted. *See, e.g., In re 234–6 West 22nd St. Corp.,* 214 B.R. 751, 757 (Bankr.D.N.Y.1997) ("[T]he concept of bad faith filing should be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances.") (quoting Collier on Bankruptcy, P 362.07[6][a] at 362–105); *Marsch v. Marsch (In re Marsch),* 36 F.3d 825, 828 (9th Cir.1994) (per curiam) ("The test [of good faith] is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis.").

■ Ultimately, bad faith is one component of, but not necessarily dispositive of, the balancing test. "The good faith standard applied to bankruptcy petitions 'furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.'" *C–TC 9th Ave. Pshp. v. Norton Co. (In re C–TC 9th Ave. Pshp.),* 113 F.3d 1304, 1310 (2nd Cir.1997) (quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.),* 779 F.2d 1068, 1071 (5th Cir. 1986)); *see In re Shady Grove Tech Ctr. Assocs. Ltd. Pshp.,* 216 B.R. 386, 388 (Bankr.D.Md.1998) ("circumstances which form cause for relief from stay may *include* a bad faith filing of the case.") (italics added).

Here, the bankruptcy court acknowledged Appellee's alleged bad faith, but nonetheless concluded that the balance of hardships favored denying relief from the stay. *See* Tr. at 11–12. Similarly situated courts in other circuits have reached the same conclusion. In *In re Rouse,* 301 B.R. 86 (Bankr.D.Colo.2003), debtors filed a Chapter 13 bankruptcy petition, triggering the automatic stay and preventing foreclosure on their home. A creditor, the bank from whom debtor had obtained a secured home equity line of credit, moved for relief from the stay, contending that the debtors had demonstrated bad faith because they intentionally used false social security numbers on their loan application in order to appear creditworthy. *Id.* at 87–88. The bankruptcy court found that the creditor bank was not likely to be harmed by the continuation of the stay, because (1) the bank had a sizable equity cushion, (2) the property was likely to increase rather than decrease in value over the period of the debtors' bankruptcy plan, and (3) the bank was protected in any event, because the law ensured it would either be paid in full or be allowed to foreclose. *Id.* at 89.

That court pointedly declined to address the issue of the debtors' fraudulent loan application, explaining that

the Court does not need to make a determination as to whether or not Debtors procured the loan from the Bank fraudulently. In a chapter 13 case, the Court does not focus its inquiry on past behavior, but on the balancing of the hardships to the parties involved under the Debtor's proposed plan in the context of the facts of the individual case. Chapter 13 offers a "super-discharge" from debts incurred through fraud, as well as other bad acts, 11 U.S.C. § 1328(a).... it would be a curious result indeed for Congress to offer a chapter 13 discharge to those who had engaged in pre-petition fraudulent conduct with one hand, but take that opportunity away with the other hand by granting relief from stay based upon the

same conduct. *See In re Kowalsky*, 235 B.R. 590, 595 (Bankr.E.D.Tex.1999).

*Id.* at 89–90.

*In re Kowalsky* presented another analogous set of facts. There, a creditor moved for relief from an automatic stay in order to foreclose on its security interest in the debtors' car. One of the grounds for the creditor's motion was the fact that the debtors fraudulently induced it to extend credit for the vehicle. 235 B.R. at 593 n. 2. The court substantially denied the creditor's request. *See Id.* at 596–97.[3] Applying the balance of hardships analysis, the court noted that the creditor's claim was relatively safe because (1) it was secured by a valid and perfected lien on the vehicle, (2) debtors possessed no equity in the vehicle, and (3) the debtors were current in their bankruptcy plan payments. *Id.* at 593. By contrast, the potential hardship to the debtors' plan was great, because the vehicle was the debtors' sole source of transportation. *Id.* Addressing the issue of the debtors' alleged acts of bad faith, the court noted that "the Court makes no findings as to [the issue of fraudulent inducement] since it is irrelevant to the determination of the Motion." *Id.* at 593 n. 2. The court later elaborated:

> The Court finds that the Movant's allegation that the Debtors fraudulently induced the Movant to extend credit for the vehicle, even if true, is insufficient to make a *prima facie* showing of cause for granting relief from the stay. This is particularly true in a Chapter 13 case such as this in which a debt, even if arising from a debtor's fraudulent act, will be dischargeable upon completion of a confirmed Chapter 13 plan. *In re*

*Little*, 116 B.R. 615, 620 (Bankr. S.D.Ohio 1990).

*Id.* at 595.

This case is similar to *Rouse* and *Kowalsky*. As noted *supra*, the creditor is relatively well protected, and greater hardship to other parties is likely; but the creditor asserts that the debtor's bad faith constitutes grounds for relief from the stay. As in *Rouse* and *Kowalsky*, the bankruptcy court decided that the debtor's bad faith acts were not sufficient cause to tip the balance toward granting relief from the stay.

In its support, Appellant cites *In re Chase*, 43 B.R. 739 (D.Md.1984). That court, however, reiterated the relevant point from *Kowalsky*:

> It would seem contradictory to accept on the one hand a theory that debts incurred through fraud or willful bad conduct can be discharged under Chapter 13 and on the other hand, to assert that a plan which attempts to obtain such a discharge is one proposed in bad faith.
>
> What was important for the courts which have grappled with these seemingly contradictory stances is the link between the fraudulent debt and the Chapter 13 process. The nature of the debt itself cannot preclude a Chapter 13 filing unless the debt was fraudulently incurred without any intention of repayment because of an anticipated abuse of the Chapter 13 process. *Margraf v. Oliver*, 28 B.R. 420 ([Bankr.]S.D.Ohio 1983).

*Id.* at 743–744. In *Chase*, the court found fundamental dishonesty in the entire filing:

> This Court is concerned not only with the nature of the debt, but also with the link between the events surrounding the

---

**3.** The court subjected its continuation of the automatic stay to certain conditions not relevant here. *See Id.* at 596–97.

incurring of the debt and the subsequent petition for Chapter 13 reorganization. *The debtor agreed to the judgment with little or no intention of complying with it. He then made no attempt to pay it.* When it became apparent to him via garnishment action that this judgment was real and he would have to pay ..., he immediately filed for bankruptcy reorganization.

*Id.* at 745 (italics added). Here, the bankruptcy court found no such critical flaw in Appellee's filing. It is undisputed that Appellee made payments on time for the entire period of his loan until confirmation of his bankruptcy plan, and that he has his since made on-time payments in accordance with that plan. It can hardly be said, then, that Appellee incurred his debt "without any intention of repayment." *Id.* at 743–44. It follows that it was not abuse of discretion for the bankruptcy judge to surmise that Appellee's prior bad acts did not poison the entire filing.

## V. Conclusion

Because it was not abuse of discretion for the bankruptcy judge to determine that other factors outweighed the effect of Appellee's bad faith, nor for that court to conclude that the balance of hardships weighed in favor of denying Appellant's motion for relief from the automatic stay, this court AFFIRMS the ruling of the bankruptcy court. A separate Order will follow.